BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
2121 North California Boulevard, Suite 1010
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

BURSOR & FISHER, P.A.
Joseph I. Marchese
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN CLERKIN and VERONICA MENDEZ, individually and on behalf of all others similarly situated, | Case No. C11-00527 DMR |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| MYLIFE.COM INC., JEFFREY TINSLEY, RACHEL GLASER, W. DWIGHT GORALL, ARMEN AVEDISSIAN, MICHAEL SOH, SHARYN ELES, and OAK INVESTMENT PARTNERS | **JURY TRIAL DEMANDED** |
| Defendants. | |

1    Plaintiffs John Clerkin and Veronica Mendez bring this action on behalf of themselves and

2  all others similarly situated against defendant MyLife.com, Inc. ("MyLife"), Jeffrey Tinsley,

3  Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak

4  Investment Partners.  Plaintiffs make the following allegations upon information and belief, except

5  as to allegations specifically pertaining to themselves, which are based on personal knowledge.

6                                   **NATURE OF THE ACTION**

7    1.    MyLife.com is a scam that begins with a false solicitation telling potential victims

8  that "someone" is searching for them, and they can find out who by paying a small fee.  If this ruse

9  succeeds in convincing the victim to provide credit card or other payment information for a "free

10  trial period" or a low-price membership (*e.g.*, $7.95 per month), MyLife then overbills the victim's

11  credit card for a much larger amount, often more than $100.  In exchange for this payment, MyLife

12  provides access to a list of fake names of people supposedly "searching for you," together with

13  access to a worthless website that is of no conceivable value to anyone.

14    2.    It gets worse.  Victims of the ruse then find that MyLife hacks into their address

15  books to target their friends, family and other contacts with spam solicitations stating that

16  "someone" is looking for them.  This starts the cycle anew by priming the pump with a fresh crop

17  of victims that MyLife tricks with false solicitations, overbills, and hacks.

18    3.    Credit card companies have fielded thousands of complaints about MyLife and its

19  fraudulent billing practices.  As a result, some, including Visa and American Express, have

20  designated MyLife as a frequent offender whose charges are inherently suspect.  If a customer calls

21  to complain, Visa or American Express will immediately identify MyLife as a frequent offender

22  and issue a credit for the disputed charge.  To them, the name MyLife.com is synonymous with

23  billing fraud.

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22        4.        Complaint forums on the internet are replete with the narratives of victims, all of

23   whom describe the scam in strikingly similar terms.  For example, one victim wrote:

24              I have been getting emails from MyLife.com for a few weeks telling me that
               7 people were searching for me yesterday they sent an email that 14 people
25             were searching for me, I thought it might be some long lost relatives or
               friends, it said click here to see who is searching for you and I did, then it
26             said I had to put my CC info in to see who was searching for me so I did, I
               thought I was selecting $12.95 for a year.  I looked at the 14 people
27             searching for me and didn't recognize any of them so then I knew that I had

28

been scammed.  I checked my bank balance this morning at they had charged my account $155.40.[1]

Another victim wrote:

I'm a web developer, and when I saw their commerical, it just didn't add up.  I went to the site and put in a fake name like sfsf sdgfsdgf and a real age and zip code, and guess what?!  7 people were searching for sfsf sdgfsdgf![2]

Another victim wrote:

RIP OFF. STAY AWAY. This website emailed me that 41 people were looking for me. I have a very unusual name.  I went online and clicked to pay $7.95 to see the names. mylife promptly debited my card for almost $100.00.  The "41 people" were NO ONE that I have ever heard of and they would not be looking for me by accident with the unusual name I have.  This is a complete SCAM.[3]

Another victim wrote:

This company entices buyers by claiming that 'someone' is searching for them and having buyers pay to find out who.  The 'someone' in question is a made-up individual.  …  I used a very very old zip code instead of my real one.  ML stated that someone was searching for me in that zip code, and that I'd have to pay to see the results.  …  [T]he name that came up was 'Grovia Paxton' and Paxton's only connection on the site was the company CEO.  This sound made-up to me, but just to be sure I checked my own profile to see if ML's CEO is like MySpace's Tom - he's everyone's first connection...nope.  So I logged out and entered the same search with a new 'free' registration where everything was the same except the zip code.  After paying for that subscription (just to see what happened), it turned out that Grovia Paxton also lived in that town and was looking for me.  It's obvious that the 'person' who is 'searching' for you is just a computer-generated entity which plugs in whatever zip code you're using at the time.[4]

Another victim wrote:

I went on to search for a friend and they gave me options of service.  One was one month for $12.95, so I selected that. After I found out it was useless, I went to cancel the account and found that they actually charged my credit card over $150 for a year of use in advance.  That was never made known to me anywhere in the process of enrolling and really pissed me off.  Nobody should use this website.[5]

---

[1] See http://www.complaintsboard.com/complaints/mylifecom-c196991.html?sort=datea&page=3.

[2] See http://www.complaintsboard.com/complaints/mylifecom-c196991.html?sort=datea&page=2.

[3] See http://www.talkreviews.com/mylife.

[4] See http://www.trustlink.org/Reviews/My-Life-205961269.

[5] See http://www.sitejabber.com/reviews/www.mylife.com.

Another victim wrote:

> Credit Card was billed for a full year $95, instead of 7.95/mo, made my credit card go over the limit.[6]

Another victim wrote:

> I purchased a one month trial for 5.95.  I got my credit card statement today (29th) and their is an additional charge of 191.40, which I have no clue as to what the **** that is supposed to be for.  They give you a phone number but all you get is websites as no wants to talk to me.  They are a crooked outfit.[7]

Another victim wrote:

> Tried to order twelve month subscription to mylife.com for 12.95 and I was denied thru my visa because your site tried to charge my card 155.00??? Don't know why but will make formal complaint in writing to your mylife.com site.[8]

Another victim wrote:

> I signed up for mylife.com with the understanding that i would be billed 7.95.... my credit card was billed 96.00!!!!!!! i am unable to reach anyone by phone. I am a single mother an cannot afford this!!! I am near tears. This is not right. This is a CRIME!!!![9]

Another victim wrote:

> They advertised on TV a free trial period. When I went on line, I filled out my information. After I finished, I noticed a $9.93 monthly charge. Called immediately, cancelled. I was charged for two months. I called back and they said they had no record of me cancelling. I cancelled again, then reported my credit cards stolen.[10]

Another victim wrote:

> I believed this was going to be $19. My Visa was charged $191.40. I was only a member for less than one month and am very unhappy about their billing.[11]

Another victim wrote:

> I mistakenly signed up for an 11.95 trial.  They took $143 plus 2 different times 1 dollar from my debit card.  All I had thought I was authorizing was

---

[6] See http://www.consumeraffairs.com/online/mylife.html.

[7] *Id.*

[8] *Id..*

[9] *Id..*

[10] *Id..*

[11] *Id..*

1        the $11.95.  The person I talked with (the bank gave me their phone number)
2        told me I must have not read some small print somewhere on their website.[12]

Another victim wrote:

3        I just signed up for what I thought was a year subscription to mylife.com for
4        $10.97.  When I got my confirmation back they had taken $131.42 out of my
         account.  When I contacted them they refused to refund the full amount and
5        I'm not at all sure if any of it will be refunded.  I have contacted the Attorney
         General what else can I do?[13]

Another victim wrote:

7        "MyLife" used a falsified message from a friend on FaceBook
8        recommending them, with a link to their enrollment page.  I enrolled for a
         one year trial for $10.00; when I recieved email confirmation, the charge to
9        my card was $138.00.  I called immediately and asked to cancel.  I was told
         canceling would not include a refund, but that I could "reduce" my plan to a
10       3-month enrollment for $38.00.  I have received no confirmation that this
         has occurred.  I would like all charges removed from my card and the
11       membership cancelled. Overcharge of $128.00.  Refusal to refund.[14]

Another victim wrote:

13       After filling out the required information, a page came up requesting $3.99
14       for a one year subscription.  That didn't sound to bad so I gave them my
         credit card number.  When the confirmation came through it was for $71.40.
15       Credit card can't do anything.  …[15]

Another victim wrote:

17       mylife.com charged my credit card for a full year, in advance, with no
         verification in e-mail or at the time that they were charging this amount. I
18       thought I was paying $12.95 for one month and they charged over $150. to
         my card.  I didn't find this out until I went to delete the account since it was
19       useless.  Thankfully I only waited two weeks before I decided to cancel.
         This website is no use to any one seeking to find lost friends and they lie
20       about their charges to your credit card and when your not expecting a large
         charge on your card, that I call fraud.[16]

Another victim wrote:

22       www.MyLife.com stole my address book when I visited, and sent spam
         pretending to be from me![17]

---

[12] *Id.*.

[13] *Id.*.

[14] *Id.*.

[15] *Id.*.

[16] See http://mylife.pissedconsumer.com/mylife-com-is-a-credit-card-ripoff-company-20101221212570.html.

[17] See http://www.consumeraffairs.com/online/mylife.html.

---

FIRST AMENDED CLASS ACTION COMPLAINT
C11-00527 DMR

Another victim wrote:

> This company is a total scam.  The emails you receive from this company will scan your address/contacts list and send emails to them. In effect, this site uses a virus technique to proprogate the email spam.[18]

Another victim wrote:

> Watch out for these con men.  I should have known better but was fooled by the nice commercial and thought it would be fun to see if anyone is looking for me.  Low and behold the minute I deleted the info that I put in, and changed the website, My antivirus, popped up "Intrusion Attempt Blocked" from something called "Protect Guardin".  Now I have alerts blocking a mapping attempt of my harddrive occuring several times and hour on port 135.  Several reports are being automatically generated to my antivirus software company.[19]

Another victim wrote:

> This website sent me an email (supposedly from a friend) and when I completed their little questionnaire, they hacked into my email contact list and sent everyone a message like it was from me (just like the one I received from my friend - which was a scam, too).[20]

Another victim wrote:

> This company did not disclose that they could gain access to my personal email account and all email addresses in my computer.[21]

5.     As the foregoing narratives show, individual victims of the MyLife scam are generally cheated out of roughly $90 to $190 at a time.  The filing fee to commence a civil action in this court is $350.  Even leaving aside the other expenses and attorneys fees that would necessarily be incurred, it would be economically unfeasible to seek legal redress on an individual basis.  The only feasible way for the victims of this scam to seek justice is through a class action.

6.     Although the amounts at stake for the individual victims are relatively small, MyLife has generated enormous revenues from this scam.  On November 23, 2010, MyLife announced that it is now registering more U.S. users per month than LinkedIn and Twitter.[22]

---

[18] See http://www.complaintsboard.com/complaints/mylifecom-c196991.html.

[19] See http://www.complaintsboard.com/complaints/mylifecom-c196991.html?sort=datea&page=2.

[20] See http://www.sitejabber.com/reviews/www.mylife.com.

[21] See http://www.consumeraffairs.com/online/mylife.html.

[22] *See* http://www.prnewswire.com/news-releases/mylifecom-now-registering-more-us-members-than-linkedin-twitter-110145834.html (accessed January 29, 2011).

FIRST AMENDED CLASS ACTION COMPLAINT                                                          6
C11-00527 DMR

MyLife registered 2.4 million new members in October 2010, nearly one per second.[23]  As of

January 2011, MyLife.com claimed to have "more than 62 million members."[24]  MyLife does not

publicly report its revenues.  However, if MyLife scammed each of its 62 million members out of

$90 apiece, the company would have generated more than $5.5 billion in revenue.

**PARTIES**

7.    Plaintiff John Clerkin  is a resident of Contra Costa County, California.  In mid-

2010, Mr. Clerkin began receiving e-mails from MyLife stating that people were looking for him

on MyLife and that he could find out who for free.  Mr. Clerkin also saw television advertisements

for MyLife around this same time.  The representations MyLife made in those e-mails and

advertisements were substantial factors influencing Mr. Clerkin's decision to sign up for MyLife's

services, which Mr. Clerkin did on or about September 25, 2010.  When Mr. Clerkin signed up for

MyLife's services, MyLife represented that he would be charged $21.95 for one month.  Shortly

after he began using MyLife, Mr. Clerkin discovered that no one he knew was looking for him.

Mr. Clerkin then sought to cancel the service and learned that he had been charged $155.40.  Mr.

Clerkin demanded a refund, which MyLife initially refused.  Eventually, in early October, 2010,

MyLife refunded $104.55 to him.  They refused to refund the remaining $50.85.  Each of the

representations set forth above was a substantial factor that influenced Mr. Clerkin's decision to

sign up for MyLife's services.  If he had not received those representations, Mr. Clerkin would not

have signed up for MyLife's services.

8.    Plaintiff Veronica Mendez is a resident of Solano County, California.  In early 2010,

Ms. Mendez received an e-mail from MyLife stating that people were searching for her on

MyLife.com.  The representations MyLife made in that e-mail were substantial factors influencing

Ms. Mendez's decision to sign up for MyLife's services.  She signed up for a trial subscription

with MyLife.  MyLife represented that she would be charged $5.00 if she signed up for MyLife's

service.  Rather than charging her $5.00, however, MyLife charged her $60.00.  Ms. Mendez also

discovered shortly after signing up that no one she knew was actually searching for her.  Ms.

---

[23] *See id.*

[24] *See* http://www.mylife.com/press-room (accessed January 28, 2011).

1   Mendez subsequently contacted MyLife to cancel the service and demand a refund.  MyLife

2   refused to give her any refund.  Each of the representations set forth above was a substantial factor

3   that influenced Ms. Mendez's decision to sign up for MyLife's services.  If she  had not received

4   those representations, Ms. Mendez would not have signed up for MyLife's services.

5        9.    Defendant MyLife, Inc. ("MyLife") operates the website www.mylife.com, and is a

6   Delaware corporation, registered with the California Secretary of State to conduct business in

7   California.  MyLife's principal place of business is in Santa Monica, California.

8        10.    Defendant Jeffrey Tinsley, the founder, chairman and CEO of MyLife, Inc., is a

9   resident of the greater Los Angeles area.  He describes himself as a "serial internet entrepreneur."[25]

10  That's one way to put it.  He has been running essentially the same spam-and-scam operations

11  since at least 2002, when he founded the company under the name Reunion.com.  The company

12  later operated using the name "Wink.com." before taking on its latest alias, "MyLife.com," in

13  February 2009.

14       11.    Defendant Rachel Glaser is a resident of the greater Los Angeles area.  Ms. Glaser

15  joined MyLife in a dual role as Chief Operating and Financial Officer in April 2008.  Ms. Glaser

16  oversees all aspects of the company's financial and accounting functions and additionally is

17  responsible for business operations, customer care, corporate development, investor relations and

18  strategic planning.  Ms. Glaser conspired with MyLife, Mr. Tinsley, and others to perpetrate the

19  scam described herein, including the false solicitations, fraudulent billings, and hacking described

20  herein.

21       12.    Defendant W. Dwight Gorall is a resident of West Palm Beach, Florida.  Mr. Gorall

22  joined MyLife in March 2009 as Vice President of Emerging Business.  Mr. Gorall conspired with

23  MyLife, Mr. Tinsley, and others to perpetrate the scam described herein.

24       13.    Defendant Armen Avedissian is a resident of the greater Los Angeles area.  Mr.

25  Avedissian joined MyLife in December 2009.  His responsibilities include technical, business,

26  operational, and organizational cross-functional initiatives and strategies from multi-channel

27

28       [25] *See* http://www.mylife.com/ManagementTeam.pub (accessed January 28, 2011).

1    marketing, product, and technology perspectives.  Mr. Avedissian conspired with MyLife, Mr.

2    Tinsley, and others to perpetrate the scam described herein.

3         14.    Defendant Michael Soh is a resident of the greater Los Angeles area.  Mr. Soh

4    joined MyLife as SVP, Marketing in February 2010.  Mr. Soh conspired with MyLife, Mr. Tinsley,

5    and others to perpetrate the scam described herein.

6         15.    Defendant Sharyn Eles is a resident of the greater Los Angeles area.  Ms. Eles has

7    been with MyLife from day one and is the Vice President of Marketing Operations while also

8    overseeing general business operations.  Ms. Eles conspired with MyLife, Mr. Tinsley, and others

9    to perpetrate the scam described herein.

10        16.    Defendant Oak Investment Partners is a Delaware partnership with offices in Palo

11   Alto, California.  Oak Investment Partners is a venture capital firm that provided $25 million in

12   funding to bankroll the MyLife scam, and conspired with MyLife, Mr. Tinsley, and others to

13   perpetrate the scam described herein.

14                              **JURISDICTION AND VENUE**

15        17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

16   because this case is a class action where the aggregate claims of all members of the proposed class

17   are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, as well as most

18   members of the proposed class, are citizens of states different from the state of the defendant.

19        18.    This Court has personal jurisdiction over MyLife because MyLife.com, Inc. is

20   registered with the California Secretary of State to conduct business within California, maintains its

21   headquarters and employees within California, and conducts substantial business within California,

22   such that MyLife has significant continuous and pervasive contacts with the State of California.

23        19.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because MyLife transacts

24   significant business within this District. Venue is also proper in this Court because MyLife's User

25   Agreement provides:

26                    This Agreement is governed by the laws of the State of California, U.S.A.,
                      without regard to its conflicts of law provisions; and you hereby consent to
27                    the jurisdiction of and venue in the federal and state courts located in San

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                                        9
C11-00527 DMR

Francisco County, California, U.S.A. in all disputes arising out of or relating to the Service. [26]

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs seek to represent a class defined as all persons, worldwide, who purchased services from www.mylife.com, from the date that site commenced operation through the present (hereafter, the "Class").  Excluded from the Class are governmental entities, defendants, defendants' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial offer presiding over this matter and the members of their immediate families and judicial staff.

21.     Plaintiffs also seek to represent a subclass consisting of all Class members who purchased services from www.mylife.com for personal, family or household purposes (hereafter, the "Consumer Subclass").

22.     Members of the Class and Consumer Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, based on MyLife.com subscriber estimates, members of the Class number in excess of one million.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery of MyLife's billing records.  Class members may be notified of the pendency of this action by mail, email and/or publication.

23.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

a.   Whether defendants sent false solicitations telling potential victims that "someone" is searching for them, and they can find out who my paying a small fee.

b.   Whether defendants misrepresented MyLife's prices and/or placed unauthorized charges on subscribers' accounts.

c.   Whether MyLife improperly billed Plaintiffs and members of the Class and Consumer Subclass for services that it promised but did not provide.

[26] *See* http://www.mylife.com/user-agreement (accessed January 28, 2011).

d.   Whether MyLife used false pretenses to hack into or otherwise gain access to the address books of members of the Class and Consumer Subclass.

e.   Whether such conduct violated the CLRA.

f.   Whether such conduct violated the UCL's unlawful, unfair, and fraudulent and deceptive prongs.

g.   Whether defendants were unjustly enriched by such conduct.

24.   Plaintiffs' claims are typical of the claims of the proposed class.  Each class member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories.

25.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

26.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

27.   Unless a class is certified, MyLife will retain monies received as a result of its conduct that were taken from Plaintiffs and proposed Class members.  Unless a classwide

injunction is issued, MyLife will continue to commit the violations of law alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
### (Common Count For Money Had And Received)

28.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

29.     This COUNT I is brought against all defendants by Plaintiffs individually, and on behalf of the Class and Consumer Subclass.

30.     MyLife.com has improperly billed Plaintiffs and Class members for services that it promised but did not provide.

31.     As a proximate result of these improper billings, defendants have received monies from Plaintiffs and Class members, and defendants have no right thereto.

32.     The monies received by defendants from these improper billings belong to Plaintiffs and Class members and must be returned to them.

33.     Defendants Jeffrey Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts causing the improper billings and/or received monies as a result of the improper billings described herein.

34.     Defendant Jeffrey Tinsley is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to the Count I, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to the Count I, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to the Count I, (d) for furnishing the means for the accomplishment of the conduct giving rise to the Count I, and (e) for the conduct of Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Tinsley personally authorized or directed his subordinates to commit the conduct described herein.

35.     Defendant Rachel Glaser is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count I, (b) for conspiring with MyLife

1   and other defendants to commit the conduct giving rise to Count I, and providing substantial

2   assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other

3   defendants giving rise to Count I, (d) for furnishing the means for the accomplishment of the

4   conduct giving rise to Count I, and (e) for the conduct of W. Dwight Gorall, Armen Avedissian,

5   Michael Soh, Sharyn Eles under the theory of respondeat superior, because Glaser personally

6   authorized or directed her subordinates to commit the conduct described herein.

7          36.    Defendant W. Dwight Gorall is also personally liable (a) for aiding and abetting

8   MyLife and other defendants to commit the conduct giving rise to the Count I, (b) for conspiring

9   with MyLife and other defendants to commit the conduct giving rise to the Count I, and providing

10  substantial assistance in doing so, (c) for furnishing the means for the accomplishment of the

11  conduct giving rise to the Count I, and (d) for the conduct of Armen Avedissian, Michael Soh,

12  Sharyn Eles under the theory of respondeat superior, because Gorall personally authorized or

13  directed his subordinates to commit the conduct described herein.

14         37.    Defendant Armen Avedissian is also personally liable (a) for aiding and abetting

15  MyLife and other defendants to commit the conduct giving rise to Count I, (b) for conspiring with

16  MyLife and other defendants to commit the conduct giving rise to Count I, and providing

17  substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the

18  conduct giving rise to Count I.

19         38.    Defendant Michael Soh is also personally liable (a) for aiding and abetting MyLife

20  and other defendants to commit the conduct giving rise to Count I, (b) for conspiring with MyLife

21  and other defendants to commit the conduct giving rise to Count I, and providing substantial

22  assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct

23  giving rise to Count I.

24         39.    Defendant Sharyn Eles is also personally liable (a) for aiding and abetting MyLife

25  and other defendants to commit the conduct giving rise to Count I, (b) for conspiring with MyLife

26  and other defendants to commit the conduct giving rise to Count I, and providing substantial

27  assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct

28  giving rise to Count I.

40.     Defendant Oak Investment Partners is also liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count I, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count I, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count I.

41.     WHEREFORE, Plaintiffs seek an order requiring defendants to:

(a) Pay damages according to proof;

(b) Immediately cease the conduct alleged herein;

(c) Make full restitution of all monies wrongfully obtained; and

(d) Disgorge all ill-gotten revenues and/or profits.

**COUNT II**
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code §1750, *et seq.***

42.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

43.     This COUNT II is brought against all defendants by Plaintiffs individually, on behalf of the Consumer Subclass, against all defendants.

44.     MyLife violated Civil Code § 1770(a)(2), (3), (5), (9), (14) and (16) by disseminating false solicitations representing that "someone" is looking for the recipient, and that information about this "someone" can be obtained from MyLife.com when that is not the case.

45.     MyLife violated Civil Code § 1770(a)(5), (9), (14) and (16) by misrepresenting the prices and charges for its services and imposing unauthorized charges on Class members' accounts.

46.     Plaintiffs and members of the Class and Consumer Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for MyLife's purported services they otherwise would not have incurred or paid.

47.     Defendants Jeffrey Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts constituting violations of the CLRA.

FIRST AMENDED CLASS ACTION COMPLAINT
C11-00527 DMR

14

48.    Defendant Jeffrey Tinsley is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count II, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count II, and (e) for the conduct of Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Tinsley personally authorized or directed his subordinates to commit the conduct described herein.

49.    Defendant Rachel Glaser is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count II, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count II, and (e) for the conduct of W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Glaser personally authorized or directed her subordinates to commit the conduct described herein.

50.    Defendant W. Dwight Gorall is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to the Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to the Count II, and providing substantial assistance in doing so, (c) for furnishing the means for the accomplishment of the conduct giving rise to the Count II, and (d) for the conduct of Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Gorall personally authorized or directed his subordinates to commit the conduct described herein.

51.    Defendant Armen Avedissian is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count II.

52.     Defendant Michael Soh is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count II.

53.     Defendant Sharyn Eles is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count II.

54.     Defendant Oak Investment Partners is also liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count II, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count II, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count II.

55.     On February 1, 2011, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code §1782(a). Plaintiffs sent Defendants a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  Defendants were advised to provide the relief requested within (30) days.  Defendants did not comply with the demands in Plaintiffs' CLRA notice letter.  A true and correct copy of Plaintiffs' CLRA letter is attached hereto as Exhibit A.

56.     WHEREFORE, Plaintiffs seek an order requiring defendants to:

(a)  Pay damages according to proof;

(b)  Immediately cease the conduct alleged herein

(c)  Make full restitution of all monies wrongfully obtained;

(d)  Disgorge all ill-gotten revenues and/or profits; and

(e) Punitive damages.

## COUNT III

**Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code §§ 17200 et seq.
(Fraudulent and Deceptive Practices)**

57.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

58.     This COUNT III is brought against all defendants by Plaintiffs individually, and on behalf of the Class and Consumer Subclass.

59.     MyLife violated the fraudulent and deceptive prong of the UCL by disseminating false solicitations representing that "someone" is looking for the recipient, and that information about this "someone" can be obtained from MyLife.com when that is not the case.

60.     MyLife also violated the fraudulent and deceptive prong of the UCL by misrepresenting the prices and charges for its services and imposing unauthorized charges on Class members' accounts.

61.     MyLife also violated the fraudulent and deceptive prong of the UCL by using false pretenses to hack into or otherwise gain access to the address books of members of the Class and Consumer Subclass.

62.     Plaintiffs and members of the Class and Consumer Subclass have suffered harm as a result of these violations of the fraudulent and deceptive prong of the UCL because they have incurred charges and/or paid monies for MyLife's purported services they otherwise would not have incurred or paid.

63.     Defendants Jeffrey Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts constituting fraudulent and deceptive practices under the UCL.

64.     Defendant Jeffrey Tinsley is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing

substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count III, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count III, and (e) for the conduct of Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Tinsley personally authorized or directed his subordinates to commit the conduct described herein.

65.     Defendant Rachel Glaser is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count III, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count III, and (e) for the conduct of W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Glaser personally authorized or directed her subordinates to commit the conduct described herein.

66.     Defendant W. Dwight Gorall is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to the Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to the Count III, and providing substantial assistance in doing so, (c) for furnishing the means for the accomplishment of the conduct giving rise to the Count III, and (d) for the conduct of Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Gorall personally authorized or directed his subordinates to commit the conduct described herein.

67.     Defendant Armen Avedissian is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count III.

68.     Defendant Michael Soh is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing

substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count III.

69.     Defendant Sharyn Eles is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count III.

70.     Defendant Oak Investment Partners is also liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count III, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count III, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count III.

71.     Pursuant to Bus. & Prof. Code Section 17203, Plaintiffs seek an order permanently enjoining defendants from continuing to engage in their unfair and deceptive conduct alleged herein. Plaintiffs also seek and order requiring defendants to:

(a) immediately cease the conduct described herein;

(b) make full restitution of all monies wrongfully obtained; and

(c) disgorge all ill-gotten revenues and/or profits.

### COUNT IV
**Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq*.**
**(Unlawful Practices)**

72.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73.     This COUNT IV is brought against all defendants by Plaintiffs individually, and on behalf of the Class and Consumer Subclass.

74.     MyLife violated the unlawful prong of the UCL by violating Civil Code § 1770(a)(2), (3), (5), (9), (14) and (16) as described above.

75.     Plaintiffs and members of the Class and Consumer Subclass have suffered harm as a result of these violations of the unlawful prong of the UCL because they have incurred charges and/or paid monies for MyLife's purported services they otherwise would not have incurred or paid.

76.     Defendants Jeffrey Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts constituting violations of the unlawful prong of the UCL.

77.     Defendant Jeffrey Tinsley is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count IV, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count IV, and (e) for the conduct of Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Tinsley personally authorized or directed his subordinates to commit the conduct described herein.

78.     Defendant Rachel Glaser is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count IV, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count IV, and (e) for the conduct of W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Glaser personally authorized or directed her subordinates to commit the conduct described herein.

79.     Defendant W. Dwight Gorall is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to the Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to the Count IV, and providing substantial assistance in doing so, (c) for furnishing the means for the accomplishment of

the conduct giving rise to the Count IV, and (d) for the conduct of Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Gorall personally authorized or directed his subordinates to commit the conduct described herein.

80.     Defendant Armen Avedissian is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count IV.

81.     Defendant Michael Soh is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count IV.

82.     Defendant Sharyn Eles is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count IV.

83.     Defendant Oak Investment Partners is also liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count IV, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count IV, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count IV.

84.     Pursuant to Bus. & Prof. Code Section 17203, Plaintiffs seek an order of this Court permanently enjoining defendants from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiffs also seek an order requiring defendants to:

    (a)     immediately cease the conduct described herein;

    (b)     make full restitution of all monies wrongfully obtained; and

1        (c)      disgorge all ill-gotten revenues and/or profits.

**COUNT V**

**Unfair Business Practices In Violation Of California's Unfair Competition Law,
Business and Professions Code §§ 17200 *et seq*.
(Unfair Practices)**

85.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

86.     This COUNT V is brought against all defendants by Plaintiffs individually, and on behalf of the Class and Consumer Subclass.

87.     MyLife's conduct, described herein, violated the unfair prong of the UCL because such conduct violated various laws and policies recognized by the California Legislature and the California courts, including without limitation, the CLRA, because the utility of MyLife's conduct is significantly outweighed by the gravity of the harms it imposed on consumers, and because MyLife's business practices described herein are oppressive, unscrupulous or substantially injurious to consumers.

88.     Plaintiffs and members of the Class and Consumer Subclass have suffered harm as a result of these violations of the unfair prong of the UCL because they have incurred charges and/or paid monies for MyLife's purported services they otherwise would not have incurred or paid.

89.     Defendants Jeffrey Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts constituting violations of the unfair prong of the UCL.

90.     Defendant Jeffrey Tinsley is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count V, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count V, and (e) for the conduct of Rachel Glaser, W. Dwight Gorall,

Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Tinsley personally authorized or directed his subordinates to commit the conduct described herein.

91.     Defendant Rachel Glaser is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving rise to Count V, (d) for furnishing the means for the accomplishment of the conduct giving rise to Count V, and (e) for the conduct of W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Glaser personally authorized or directed her subordinates to commit the conduct described herein.

92.     Defendant W. Dwight Gorall is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to the Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to the Count V, and providing substantial assistance in doing so, (c) for furnishing the means for the accomplishment of the conduct giving rise to the Count V, and (d) for the conduct of Armen Avedissian, Michael Soh, Sharyn Eles under the theory of respondeat superior, because Gorall personally authorized or directed his subordinates to commit the conduct described herein.

93.     Defendant Armen Avedissian is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count V.

94.     Defendant Michael Soh is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count V.

95.     Defendant Sharyn Eles is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count V.

96.     Defendant Oak Investment Partners is also liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count V, (b) for conspiring with MyLife and other defendants to commit the conduct giving rise to Count V, and providing substantial assistance in doing so, and (c) for furnishing the means for the accomplishment of the conduct giving rise to Count V.

97.     Pursuant to Bus. & Prof. Code Section 17203, Plaintiffs seek an order of this Court permanently enjoining defendants from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiffs also seek an order requiring defendants to:

        (a)     immediately cease its unlawful acts and practices;

        (b)     make full restitution of all monies wrongfully obtained; and

        (c)     disgorge all ill-gotten revenues and/or profits.

### COUNT VI
### Unjust Enrichment/Common Law Restitution

98.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

99.     This COUNT VI is brought against all defendants by Plaintiffs individually, and on behalf of the Class and Consumer Subclass.

100.    Each defendant received benefits from, and at the expense of Plaintiffs and members of the Class and Consumer Subclass, who were improperly billed for services that MyLife promised but did not provide.

101.    It would be unjust for defendants to retain those benefits at the expense of Plaintiffs and Class members.

102.    WHEREFORE, Plaintiffs seek an order requiring defendants to:

(a) Pay damages according to proof;

(b) Immediately cease the improper conducted alleged herein;

(c) Make full restitution of all monies wrongfully obtained; and

(d) Disgorge all ill-gotten revenues and/or profits.

**PRAYER FOR RELIEF**

103.     WHEREFORE, Plaintiffs, on behalf of  themselves and on behalf of the members of the proposed Class and Consumer Subclass, prays: (a) for all forms of relief set forth above, (b) for an order certifying the proposed Class and Consumer Subclass and appointing Plaintiffs and their undersigned counsel of record to represent the proposed Class and Consumer Subclass, (c) for punitive damages, (d) for costs of suit herein; (e) for both pre- and post-judgment interest on any amounts awarded, (d) for payment of reasonable attorney's fees, and (e) for such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

104.     Plaintiffs demand a trial by jury.

Dated:  March 22, 2011                    Respectfully submitted,

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
2121 North California Boulevard, Suite 1010
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

_____
                        L. Timothy Fisher

BURSOR & FISHER, P.A.
Joseph I. Marchese
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com

Attorneys for Plaintiffs

I, John Clerkin, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.  While living in the Northern District of California, I received e-mails from MyLife stating that people were looking for me on MyLife.com and I saw advertisements for MyLife on television.  The representations MyLife made in those emails and advertisements were substantial factors influencing my decision to sign up for MyLife's services.  MyLife represented that people were looking for me through the MyLife website (which turned out to be false).  MyLife also represented that I would be charged $21.95 if I signed up for MyLife's service (but then actually charged me $155.40).  Each of those representations was a substantial factor that influenced my decision to sign up for MyLife's services.  If I had not received those reresentations, I would not have signed up for MyLife's services.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 11, 2011 at Richmond, California.

John Clerkin

I, Veronica Mendez, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that defendants do business in the Northern District of California and MyLife.com's User Agreement includes a provision requiring that any case "arising out of or relating to the Service" be brought in "the federal and state courts located in San Francisco County, California, U.S.A."

3.      I received an e-mail from MyLife stating that people were looking for me on MyLife.com.  The representations MyLife made in that e-mail were substantial factors influencing my decision to sign up for MyLife's services.  MyLife represented that people were looking for me through the MyLife website (which turned out to be false).  MyLife also represented that I would be charged $5.00 if I signed up for MyLife's service (but then actually charged me $60.00).  Each of those representations was a substantial factor that influenced my decision to sign up for MyLife's services.  If I had not received those representations, I would not have signed up for MyLife's services.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 9, 2011 at Natomas, California.

Veronica Mendez

# EXHIBIT A

# BURSOR & FISHER, P.A.
## ATTORNEYS AT LAW
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596-7351
(925) 482-1515 (tel)
(925) 407-2700 (fax)
www.bursor.com


February 1, 2011


***Via Certified Mail - Return Receipt Requested***

MyLife.com, Inc.
Mr. Jeffrey Tinsley
Ms. Rachel Glaser
Mr. W. Dwight Gorall
Mr. Armen Avedissian
Mr. Michael Soh
Ms. Sharyn Eles
12400 Wilshire Blvd., Suite 1500
Los Angeles, CA 90025

Oak Investment Partners
525 University Avenue, Suite 1300
Palo Alto, CA 94301

Re:     *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

        This letter serves as a preliminary notice and demand for corrective action by
MyLife.com, Inc., ("MyLife") pursuant to the provisions of California Civil Code
§ 1782, on behalf of our client John Clerkin and all other persons similarly situated.

        MyLife sends false solicitations to its potential victims stating that "someone" is
searching for them and they can find out who by paying a small fee.  If MyLife succeeds
in convincing a consumer to provide credit card or other payment information for a "free
trial period" or a low-price membership, MyLife then overbills the victim's credit card
for a much larger amount.  In exchange for the payment, MyLife provides access to a list
of fake names of people supposedly "searching for you," together with access to a
worthless website that is of no value to anyone.  MyLife also hacks into the address
books of its victims and targets their friends, family and other contacts with spam
solicitations that "someone" is looking for them.

        By disseminating false solicitations representing that "someone" is looking for the
victim, that information about this "someone" can be obtained from MyLife, by
misrepresenting the prices and charges for its services, and by imposing unauthorized

**BURSOR & FISHER, P.A.**                                          page 2

charges on its victims' accounts, MyLife has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(2), (3), (5), (9), (14) and (16).

We hereby demand that MyLife immediately (1) cease and desist from sending false solicitations that "someone" is looking for the recipient; (2) cease and desist from representing that information about this "someone" can be obtained from MyLife; (3) make full restitution of all monies wrongfully obtained by refunding all payments received from purchasers of MyLife.com "services"; and (4) cease and desist from hacking into the address books of your customers.

It is further demanded that MyLife preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents reflecting the identities of all persons who purchased services from www.mylife.com, from the date that site commenced operation through the present, and the amounts charged to and/or paid by each such person;

2.      All documents concerning your solicitations to potential customers;

3.      All documents concerning presentations to or communications with investors concerning MyLife's business plans, results or prospects.

4.      All computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms, processes, or structure of the MyLife.com website and any application programming interfaces (APIs) associated with MyLife.com;

5.      All communications with customers concerning complaints related to MyLife's solicitations, MyLife's failure to provide promised services, data or information, misrepresentations related to MyLife's service or prices, or unauthorized charges;

6.      All communications with banks or credit card companies concerning disputed charges for MyLife.com services.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with MyLife to attempt to resolve the demands asserted in this letter.  If MyLife wishes to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that MyLife is not interested in resolving this dispute short of litigation.

**BURSOR & FISHER, P.A.**                                        page 3

If MyLife contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

L. Timothy Fisher
ltfisher@bursor.com

1

**CERTIFICATE OF SERVICE**

2      I am a resident of the State of California, over the age of eighteen years, and not a party to

3  this action.  My business address is Bursor & Fisher, P.A., 2121 North California Blvd., Suite 1010,

4  Walnut Creek, CA 94596.  On March 22, 2011, I electronically filed the FIRST AMENDED

5  CLASS ACTION COMPLAINT with the Court's ECF system.  Pursuant to Federal Rule of Civil

6  Procedure 5(b)(1), the ECF system electronically served a copy of the document on counsel for

7  defendants as follows:

8
         Sameer Dhond
9        Latham & Watkins LLP
         505 Montgomery Street, Suite 2000
10       San Francisco, CA 94111
         E-Mail: Sameer.dhond@lw.com
11
         I also e-mailed a copy of the document to the following counsel:
12

13       Jennifer Archie                          Ronald Palmieri
         Latham & Watkins LLP                     Law Offices of Ronald Palmieri
14       555 Eleventh Street, NW, Suite 1000      1644 North Orange Grove Avenue
         Washington, DC 20004-1304                Los Angeles, CA 90046
15       E-Mail: Jennifer.archie@lw.com           E-Mail: rjp@lorjp.com

16       I declare under penalty of perjury under the laws of the State of California that the above is

17  true and correct, executed on March 22, 2011, at Walnut Creek, California.

18

19

20                                                _____
                                                          L. Timothy Fisher
21

22                                                L. Timothy Fisher (State Bar No. 191626)
                                                  Bursor & Fisher, P.A.
23                                                2121 North California Blvd., Suite 1010
                                                  Walnut Creek, CA 94596
24                                                Telephone: (925) 482-1515
                                                  Facsimile: (925) 407-2700
25                                                E-Mail: ltfisher@bursor.com

26

27

28
    CERTIFICATE OF SERVICE                                                           1
    CASE NO. 11-CV-00527 DMR