LATHROP & GAGE LLP
John Shaeffer (Bar No. 138331)
jshaeffer@lathropgage.com
Carole Handler (Bar No. 129381)
chandler@lathropgage.com
Randy Merritt (Bar No. 187046)
rmerritt@lathropgage.com
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Fax: (310) 789-4601

New Attorneys for Defendants
MYLIFE.COM INC. and OAK INVESTMENT PARTNERS
JEFFREY TINSLEY, RACHEL GLASER,
W. DWIGHT GORALL, ARMEN
AVEDISSIAN, MICHAEL SOH, and SHARYN ELES

LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
lawofcsrjp@aol.com
1644 North Orange Grove Avenue
Los Angeles, CA 90046
Telephone:    (323) 882-8225
Fax:    (323) 882-8208

Co-Counsel for Defendant
MYLIFE.COM INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN CLERKIN and VERONICA MENDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYLIFE.COM INC., JEFFREY TINSLEY, RACHEL GLASER, W. DWIGHT GORALL, ARMEN AVEDISSIAN, MICHAEL SOH, SHARYN ELES, and OAK INVESTMENT PARTNERS,<br><br>Defendants. | Case No. 4:11-CV-00527-CW<br><br>**DEFENDANTS MYLIFE.COM INC., JEFFREY TINSLEY, RACHEL GLASER, W. DWIGHT GORALL ARMEN AVEDISSIAN, MICHAEL SOH, SHARYN ELES, AND OAK INVESTMENT PARTNERS NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  June 2, 2011<br>Time:  2:00 p.m.<br>Judge: Hon. Claudia Wilken |

## **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................3

II.  ALLEGATIONS IN THE FIRST AMENDED COMPLAINT....................................5

III. LEGAL ARGUMENT ........................................................................................8

   A.   Standard For Motion To Dismiss........................................................................8

   B.   Plaintiffs Have Failed to Allege Any Facts Identifying The Particular Actions Taken By the Individual Defendants and Oak Investment That Subject Them To Liability. ...........................9

   C.   Plaintiffs Have Not Alleged Facts to State Any Claims Against MyLife................................11

     1.   Plaintiffs Have Not Stated A Claim For Violation Of The CLRA .......................................11

       (a)   Plaintiffs' Allegations Of MyLife's Representations Regarding "Someone Looking For You" Are Insufficient To State A Claim Under The CLRA........................................12

       (b)   Plaintiffs' Allegations Of MyLife's Billing Practices Are Insufficient To State A Claim Under The CLRA............................................14

     2.   Plaintiffs Have Failed To Allege That Plaintiffs Have Been Damaged By Any Purported Violation Of The CLRA............................................15

   D.   Plaintiffs Have Not Stated A Claim For Violation Of The UCL...............................................16

     1.   Plaintiffs Do Not Allege Facts Sufficient To Establish Standing For UCL. ........................16

     2.   Plaintiffs Have Failed To Allege Sufficient Facts To Establish A Claim For Relief Under Any of The Three Prongs of the UCL............................................19

       (a)   Plaintiffs Do Not State A Claim Under the Unlawful Practices Prong.........................19

       (b)   Plaintiffs Do Not State A Claim Under the Unfair Practices Prong. ............................19

       (c)   Plaintiffs Do Not State A Claim Under the Fraudulent Practices Prong. .....................22

   E.   Plaintiffs Have Not Stated A Claim For Money Had And Received........................................23

   F.   Plaintiffs Have Not Stated A Claim For Unjust Enrichment or Restitution. ...........................24

IV.  CONCLUSION ........................................................................................25

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009) ................................................................1, 8, 9, 10, 11, 15

*Bastanchury v. Times-Mirror Co.,*
   68 Cal. App. 2d 217 (1945)..................................................................................23

*Baxter v. Intelius,*
   2010 U.S. Dist. LEXIS 104218 (C.D. Cal. Sept. 16, 2010)........................18, 23

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................1, 3, 8, 9, 10, 11, 15

*Berryman v. Merit Property Mgmt., Inc.,*
   152 Cal.App.4th 1544 (2007) ........................................................................19, 24

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009)........................................................................1, 17, 18

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994)....................................................................................5

*Buckland v. Threshold Enterprises, Ltd.*
   155 Cal.App.4th 798 (2007) .................................................................................16

*Casey v. U.S. Bank National Ass'n,*
   127 Cal.App.4th 1138 (2005) ...............................................................................11

*Cattie v. Wal-Mart Stores,*
   504 F.Supp.2d 939 (S.D.Cal. 2007) .......................................................................8

*Cel-Tech Comm. V. Los Angeles Cellular Telephone Co.,*
   20 Cal.4th 163 (1999) .....................................................................19, 20, 21, 22

*Peterson v. Cellco Partnership,*
   164 Cal.App.4th 1583 (2008) ...............................................................................16

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir.1997)....................................................................................9

*Del E. Webb Corp. v. Structural Materials Co.,*
   123 Cal. App. 3d 593 (1981)................................................................................24

*Durell v. Sharp Healthcare,*
   183 Cal.App.4th 1350 (2010) ..................................................................20, 21, 24

1
2

*Ferrington v. McAfee, Inc.*
    L 3910169, 11 (N.D.Cal. 2010) .................................................................................19

3
4

*Fortaleza v. PNC Financial Services Group, Inc.*
    642 F.Supp.2d 1012 (N.D. Cal. 2009) .......................................................................10

5
6

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995).........................................................................................12

7

*Hays v. Temple*,
    23 Cal.App.2d 690 (1937).........................................................................................24

8
9

*In re Silicon Graphics Inc. Securities Litigation*,
    183 F.3d 970 (9th Cir. 1999)........................................................................................5

10
11

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) .........................................................................................17, 18

12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).......................................................................................9

13
14

*Kelly v. Mortgage Electronic Registration Systems, Inc.*,
    642 F.Supp.2d 1048 (N.D. Cal. 2009) .......................................................................10

15
16

*Kwikset Corp. v. Sup. Court*,
    51 Cal.4th 310 (2011) .........................................................................................16, 17

17
18

*Lane v. Vitek Real Estate Industries Group*,
    713 F.Supp.2d 1092 (E.D.Cal. 2010).........................................................................11

19

*Lavie v. Proctor & Gamble Co.*,
    105 Cal.App.4th 496 (2003) ................................................................................12, 22

20
21

*Lozano v. AT & T Wireless Services, Inc.*
    504 F.3d 718 (9th Cir. 2007)......................................................................................22

22
23

*McBride v. Boughton*
    123 Cal.App.4th 379 (2004) ................................................................................24, 25

24
25

*Melchior v. New Line Productions, Inc.*,
    106 Cal.App.4th 779 (2003) ......................................................................................24

26

*Meyer v. Sprint Spectrum, L.P.*
    45 Cal.4th 634 (2009) ................................................................................................15

27
28

*Morris v. BMW of North America, LLC*,
    2007 WL 3342612 (N.D.Cal. 2007)...........................................................................21

*Navarro v. Block,*
   250 F.3d. 729 (9th Cir. 2001) .................................................................................8

*Neitzke v. Williams,*
   490 U.S. 319 (1989) ...............................................................................................8

*Orloff v. Metropolitan Trust Co.,*
   17 Cal. 2d 484 (1941) ...........................................................................................24

*Orozco v. DHI Mortg. Co. LTD, LP,*
   2010 WL 2757283 (S.D.Cal. 2010) ....................................................................21

*People v. Casa Blanca Convalescent Homes, Inc.,*
   159 Cal.App.3d 509 (1984) ...........................................................................20, 21

*Peterson v. Cellco Partnership,*
   164 Cal.App.4th at 1591 .......................................................................................18

*Philpott v. Superior Court,*
   1 Cal. 2d 512 (1934) .............................................................................................23

*Podolsky v. First Healthcare Corp.,*
   50 Cal.App.4th 632 (1996) ...................................................................................16

*Sanchez v. Bear Stearns Residential Mortg. Corp.,*
   2010 WL 1911154 (S.D.Cal. 2010) ....................................................................21

*Schultz v. Harney,*
   27 Cal.App.4th 1611 (1994) .................................................................................23

*Simila v. American Sterling Bank,*
   2010 WL 3988171 (S.D.Cal.,2010) .....................................................................21

*State Farm & Casualty Co. v. Superior Court,*
   45 Cal.App.4th 1093 (1996) ...........................................................................20, 21

*Van Slyke v. Capital One Bank,*
   2007 WL 3343943 (N.D.Cal. 2007).....................................................................21

*Vess v. Ciba-Geigy Corp., USA,*
   317 F.3d 1097 (9th Cir. 2003)................................................................................9

**Statutes & Other Authorities**

CAL. BUS. & PROF. CODE § 17200 ...............................................................................16

CAL. CIV. CODE § 1770 .............................................................................12, 13, 14

FED. R. CIV. PROC. 9(b)...................................................................................3, 9

FED. R. CIV. PROC. 12(b)(6) ...........................................................................................................8

MOTION TO DISMISS UNDER FRCP 12(b)(6) – [Case No. 4:11-CV-00527-CW]

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2011, at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 2, Fourth Floor of the above-entitled Court located at 1301 Clay Street, Oakland, California 94612, MyLife.Com Inc. ( "MyLife") and Oak Investment Partners (the "Oak Investment") and for defendants Jeffrey Tinsley, Rachel Glaser, Armen Avedissian, Michael Soh, Sharyn Eles, and Defendant W. Dwight Gorall (the "Individual Defendants") (collectively, "Defendants") will and hereby do move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing each claim for relief against Defendants contained in the First Amended Complaint, filed by Plaintiffs John Clerkin and Victoria Mendez ("Plaintiffs").

Defendants' Motion is made on the following grounds

1.  Plaintiffs' First, Second, Third, Fourth, Fifth and Six Causes of Action against the Individual Defendants and Oak Investment fail to state claims upon which relief can be granted because Plaintiffs fail to allege necessary factual allegations supporting the elements of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

2.  Plaintiffs' First, Second, Third, Fourth, Fifth and Six Causes of Action against MyLife fail to state claims upon which relief can be granted because Plaintiffs fail to allege necessary factual allegations supporting the elements of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

3.  In addition to having failed to state a claim upon which relief could be granted, Plaintiffs' Third, Fourth, and Fifth Causes of Action under California's Unfair Competition Law ("UCL") against all Defendants should be dismissed as Plaintiffs have failed to establish the necessary standing to bring such claims under California Business & Professions Code § 17204. *Kwikset Corp. v. Sup. Court*, 51 Cal.4th 310, 322 (2011); *Birdsong v. Apple, Inc*., 590 F.3d 955, 960 (9th Cir. 2009).

1    The foregoing grounds are addressed in detail in the attached Memorandum of Points and

2    Authorities.  This Motion is based on this Notice, the attached Memorandum of Points and

3    Authorities, on all papers, pleadings, records and files in this case, on all other matters of which

4    judicial notice may be taken, and on such other evidence and/or argument as may be presented to the

5    Court on the hearing of this Motion.

6    Defendants respectfully request that the Court dismiss each claim for relief against Defendants

7    contained in Plaintiffs' First Amended Complaint.

8    DATED:  April 12, 2011                    Respectfully submitted,

9                                           By _____/S/ John Shaeffer_____
                                              John Shaeffer
10                                            LATHROP & GAGE LLP
                                              1888 Century Park East, Suite 1000
11                                            Los Angeles, CA 90067
                                              Telephone: (310) 789-4600
12                                            Fax: (310) 789-4601
                                              Email: jshaeffer@lathropgage.com
13                                            New Attorneys for MYLIFE.COM INC. and
                                              OAK INVESTMENT PARTNERS; JEFFREY
14                                            TINSLEY, RACHEL GLASER, W. DWIGHT
                                              GORALL, ARMEN AVEDISSIAN, MICHAEL
15                                            SOH, AND SHARYN ELES

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Hoping to capitalize on the popularity of online social media, Plaintiffs John Clerkin and Veronica Mendez, through their counsel, present this Court with yet another poorly drawn and ill-conceived consumer class action claiming deception and unfair business practices. Specifically, Plaintiffs plead that a people search Internet site operated by MyLife.com, Inc. falsely attracted them to the site by indicating that "someone' is searching for you." Plaintiffs allege that after they paid for a subscription to the site, MyLife overcharged their credit cards for the purchased services. Plaintiffs also allege that MyLife improperly harvests its customers' personal address book from the customers' email account, even though Plaintiffs do not allege that MyLife accessed their address books. Without alleging any supporting facts, Plaintiffs impermissibly plead that MyLife's founder, several of its employees, and a venture capital company responsible for raising some money for MyLife are both directly and indirectly liable for the very same misconduct. Each of Plaintiffs' claims cannot withstand scrutiny and fails as a matter of law at this pleading stage.

**First**, Plaintiffs plead no facts supporting their naked conclusion that the defendant employees and defendant venture capital company are directly and indirectly liable for the conduct alleged, other than that these defendants work or have raised money for MyLife. In fact, the pleading is devoid of any specific allegation of wrongdoing by the individual defendants or the venture capital company. Plaintiffs allegations with respect to the entirety of their complaint lack the clarity required by Rule 12(b)(6) after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and, since each of Plaintiffs' claims against MyLife and the other defendants sound in fraud, they utterly fail for lack of specificity. *See* Fed. R. Civ. Pro 9(b).

**Second**, Plaintiffs fail to plead an actionable claim under California's Consumer Legal Remedies Act ("CLRA") arising from (1) the alleged solicitations that "someone was looking for them" or (2) for an alleged misrepresentation concerning the pricing for access to the premium portions of its website (Count II). While recognizing the need to plead that the solicitation "someone is looking for you" is false, Plaintiffs plead only that they did not recognize the names of the identified persons and not that the named persons were not in fact looking for them. Further, Plaintiffs'

conclusory claim of being overcharged is belied by their internally inconsistent factual pleading that MyLife charges its customers the entire cost of a term subscription at the time of sign up – *e.g.,* a customer who signs up of at $12.95 per month annual subscription will be charged $155.40.  Plaintiffs do not plead that this billing practice is undisclosed or deceptive.   Plaintiffs also fail to plead any cognizable damage resulting from the alleged overcharge necessary for their CLRA claim to survive. Clerkin admits that MyLife reimbursed most of his payment and he does not, because he cannot truthfully and in good faith, allege that the unreimbursed amount is not equivalent to the value he received from use of the site.  While Mendez claims she was charged $60 rather than $5 per month, she does not allege that she did not receive the full value of her membership payment – *e.g.* her $5 per month subscription was for 12 months and she received 12 months of access to the site.  Finally, while Plaintiffs claim violations of subsection (a) (2), (3), (5), (9), (14) and (16) of the CLRA, Plaintiffs do not plead how the alleged conduct actually violates any of these subsections.

**Third**, Plaintiffs fails to plead any actionable claim for violation of California Unfair Competition Law ("UCL") arising from (1) the same misconduct alleged in their CLRA claim or (2) allegations that MyLife improperly accessed customers' address books.  Plaintiffs cannot sustain any UCL claim with respect to any such unauthorized hacking *because they do not allege that MyLife accessed their address books*.  Plaintiffs' claims are based on the unlawful and unfair practices prongs of the UCL (Counts IV and V, respectively) and are, therefore, strictly derivative of their CLRA claim.  Since they cannot plead a cognizable claim under the CLRA, Plaintiffs' UCL claims predicated on unlawful and/or unfair conduct similarly must fail as well.

**Fourth**, Plaintiffs' UCL claim based on fraudulent and deceptive practices (Count III) also fails for the reasons its CRLA claim fails.  Plaintiffs do not plead facts from which the representation "someone is looking for you" can be deemed false.  Instead, they plead only that they did not recognize any of the names.  Plaintiffs also cannot plead any cognizable harm arising from MyLife's pricing methodology.  Plaintiffs do not plead, because they cannot in good faith plead, that the site fails to competently disclose this term of service or that a reasonable consumer viewing the site would not understand this terms of service.

**Fifth**, Plaintiffs' claim for money had and received (Count I) is equally deficient because it is predicated on the same conduct that forms the basis of its other claims, which seek the same remedies. As a result, this common count stands or falls with the specific counts alleging the same conduct. Because the specific counts are untenable, under the facts alleged, the count for money had and received likewise cannot survive.

**Sixth**, Plaintiffs' claims for unjust enrichment and common law restitution (Count VI) – which are not independent causes of action under California law – are dependant upon the same factual allegations relied upon for their claims grounded in fraud.  Because Plaintiffs have failed to allege the necessary factual predicates to establish fraud, their final "count" must fail.  As a result, Defendants request that this Court grant their motion to dismiss in its entirety

## II.    ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[1]

MyLife is a successful internet based people search site with more than 62 million members.[2] MyLife currently registers more members per month in the United States than either LinkedIn or Twitter.  [DK 27 at 6:21-7:7]  Defendant Jeffrey Tinsley founded MyLife's predecessor Reunion.com in 2002, and is MyLife's current chairman and CEO.  [DK 27 at 8:9-13]  Defendant Rachel Glaser joined MyLife in April 2008 and is the company's currently COO and CFO.  Defendants Armen

---

[1] In accord with long-standing law, in adjudicating a motion to dismiss under Rule 12(b)(6), the Court must treat the factual allegations in the complaint as true.  Defendants do not admit or acknowledge the veracity of the "facts" set forth in the First Amended Complaint ("FAC") and repeated in this section.  Citations to the FAC are made to its Docket Number followed by the relevant page and line number.

[2] Unfortunately for the Court, Plaintiffs offer no explication of MyLife's actual services or why 62 million people would want to use the service.  Plaintiffs' make reference to MyLife's User Agreement in the FAC [DK 27 at § 19] and for completeness this Court may consider the full text of that document.  *See In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) ("[the incorporation by reference doctrine] permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,'" quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  In its User Agreement, MyLife describes some of the benefits of its services as follows: "MyLife has profiles for over 200 million adults in the U.S.  At Mylife.com you can see public information about you from across the web, including Who's Searching for You.  By becoming a member you can control your profile and craft your online image. Our Premium Members (paid subscribers) can receive full contact information on up fifty (50) people searches on our profile database per year."

Avedissian, W. Dwight Gorall,[3] Michael Soh and Sharyn Eles are also employees of MyLife.  [DK 27 at 8:14-9:9]  Defendant Oak Investment Partners[4] ("Oak Investments") is a venture capital firm with offices in Palo Alto that raised $25 million for MyLife and its predecessors.  [DK 27 at 8:14-9:9]

The entirety of Plaintiffs' factual allegations relevant to them is contained in Paragraphs 7 and 8 of the FAC.  Plaintiffs allege that they each independently began receiving emails in 2010 that people were looking for them on MyLife and that they could find out who for free by visiting the site.  [DK 27 at 7:6-8 and 20-22]  They both registered with the site and discovered that they did not know the persons looking for them.  [DK 27 at 7:7-25]  At some point, Plaintiff both signed up for MyLife's paid subscription service.  Clerkin signed up for MyLife paid services costing $21.95[5] per month and Mendez signed up for services costing $5 per month.  [DK 27 at 7:7-25]  Thereafter, Plaintiffs discovered that MyLife charged each of their credit cards $155.40 and $60, respectively.  [DK 27 at 7:7-25]  Plaintiffs allege that, rather than charge its customers a monthly fee for service, MyLife charges a customer's credit card at time of subscription for the entire term of the monthly subscription.  [DK 27 at 5:16-18]

After learning that MyLife had charged his credit card $155.40, Clerkin sought to cancel his subscription.  [DK 27 at 7:12-17]  While MyLife initially refused Clerkin's request for a refund, in early October 2010, MyLife refunded him $104.55.  [DK 27 at 7:12-17]   Mendez similar sought to cancel her subscription and demanded a refund.  [DK 27 at 8:25-9:3]  MyLife refused to refund any portion of Mendez's subscription fee.  [DK 27 at 8:25-9:3]

In addition to the allegation made on behalf of the Plaintiffs with respect to their alleged individual experiences with MyLife, Plaintiffs' pleading recites other customer complaints found on the Internet.  [DK 27 at 2:22-6:15].  Apparently relying on these customer complaints, Plaintiffs allege

---

[3] Gorall lives and works in Florida and has no meaningful contacts with this jurisdiction.  *See* Defendant W. Dwight Gorall's Motion to Dismiss for Lack of Personal Jurisdiction, filed concurrently with this motion.

[4]

[5] Taken in context with the rest of the FAC, it appears that Plaintiffs may have transposed Clerkin's subscription, which should be $12.95 per month for an annual subscription or $155.40.

that, in addition to attracting people to its site with solicitations indicating that "someone is looking for you" and initially charging a customer's credit card more than the monthly charge for a paid subscription, Plaintiffs allege that MyLife "hacks into [its customer's] address books to target their friends, family and other contact with spam solicitations stating that 'someone' is looking for them." [DK 27 at 1:14-17]  Plaintiffs, however, do not allege that the solicitations they personally received stemmed from the illicit hacking of anyone's address book or that MyLife hacked or otherwise accessed their personal address books, nor do they allege any facts to support the bald assertion that it took place.

Plaintiffs also plead – without offering any facts about the conduct at issue – that Tinsley, Glaser, Gorall, Avedissian, Soh, Eles (the "Individual Defendants") and Oak Investment are directly and indirectly liable for the wrongful conduct alleged against MyLife.  [DK 27 at 12:33-24:10]. Within the section of the FAC identifying the parties, Plaintiffs allege only that each of these defendants "conspired with MyLife . . . and others to perpetrate the scam described herein."  [DK 27 at 8:18-9:13].  With respect to each "Count," Plaintiffs complete recitation of these defendants' responsibility, which it repeats as to each defendant on each cause of action, is as follows

> Defendants Jeffry Tinsley, Rachel Glaser, W. Dwight Gorall, Armen Avedissian, Michael Soh, Sharyn Eles, and Oak Investment Partners are each subject to direct liability for this cause of action because each of them personally performed acts [constituting a violation under the cause of action]

> [Defendant] is also personally liable (a) for aiding and abetting MyLife and other defendants to commit the conduct giving rise to Count [Number], (b) for conspiring with MyLife and other defendant to commit the conduct giving rise to the Count [Number], and providing substantial assistance in doing so, (c) under an agency theory for the conduct of MyLife.com and other defendants giving risk to the Count [Number], (d) for furnishing the means for accomplishment of the conduct giving rise to the Count [Number], and for the conduct of  [reference to each name of each of the other defendants] under the theory of respondeat superior, because [the identified defendant] authorized or directed his subordinate to commit the conduct described herein.

[DK 27 ¶¶ 33-40; 47-54; 63-70; 76-83; and 89-96 at 12:15-24:10]  Plaintiffs do not plead any specific misconduct with respect to any defendant other than MyLife.

In addition to their individual claims, Plaintiff seek to represent a class of "all persons, worldwide, who purchase services from www.mylife.com, from the date that the site commenced operation through the present (hereinafter, the 'Class')", without regard to whether such persons are satisfied or dissatisfied with services MyLife provides or its billing methodology.  [DK 27 at 10:3-9] Plaintiffs additionally seek to represent a "a subclass consisting of all Class members who purchased services from www.mylife.com for personal, family or household purposes" again without regard to whether such persons are satisfied or dissatisfied with services MyLife provides or its billing methodology.  [DK 27 at 10:9-12]

## III.   LEGAL ARGUMENT

### A.   Standard For Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d. 729, 732 (9th Cir. 2001).  When reviewing a motion to dismiss, the Court must view the facts alleged in the complaint to be true.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  This well-worn maxim, however, is not applicable to legal conclusions.  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to support a claim for relief.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Cattie v. Wal-Mart Stores*, 504 F.Supp.2d 939, 843 (S.D.Cal. 2007) ("[T]he Court is not required to accept mere conclusory allegation nor does the Court necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").  Similarly, a cause of action cannot be stated simply through "formulaic recitations of the elements of the cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a challenge under Rule 12(b)(6), a complaint must contain "enough facts to state a claim for relief that is ***plausible on its face***."  *Id*. (emphasis added).  Although plausibility does not require probability, this demand for facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  "Where a complaint pleads facts that are 'merely consistent

1   with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

2   'entitlement to relief.'"   *Iqbal*, 129 S.Ct. at 1949.

3           Here, as set forth in Section II, the only two allegations on which Plaintiffs rely in support of

4   their CLRA and UCL claims are the representations regarding "someone is looking for you" and

5   MyLife's billing methodology.  The gravamen for these necessarily sounds in fraud.  If a claim for

6   relief "is said to be 'grounded in fraud' … the pleading of that claim as a whole must satisfy the

7   particularity requirement of Rule 9(b)."  *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th

8   Cir. 2003).  Plaintiffs' claims for relief under the CLRA and the UCL, as well as its claims for money

9   had and received and common law restitution – which are wholly derivative of the fraudulent conduct

10  forming the basis of their CLRA and UCL claims – therefore, are not only subject to the requirements

11  of *Twombly* and *Iqbal*, but also subject to the heightened pleading requirements for fraud in

12  accordance with Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns v. Ford Motor Co.*,

13  567 F.3d 1120, 1125 (9th Cir. 2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading

14  standards apply to claims for violations of the CLRA and UCL.").  Under Rule 9(b), "[a]verments of

15  fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."

16  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Cooper v. Pickett,* 137

17  F.3d 616, 627 (9th Cir.1997) (same).

18      **B.      Plaintiffs Have Failed to Allege Any Facts Identifying The Particular Actions**

19              **Taken By the Individual Defendants and Oak Investment That Subject Them To**

20              **Liability.**

21          Plaintiffs fail to allege facts to establish any plausible basis to conclude that the Individual

22  Defendants and Oak Investment are directly or indirectly liable for the wrongful conduct alleged

23  against MyLife.  Other than simply identifying their position with MyLife, the entirety of Plaintiffs'

24  allegations against the Individual Defendants and Oak Investment are that they (1) "personally

25  performed [undefined] acts"[6] in violation of the particular cause of action; (2) aided and abetted

26  MyLife and other defendants to commit the conduct giving rise to the listed claims for relief; (3)

27

28  _____

[6] Notably, Plaintiffs fail to identify or describe any of these purported "acts" in the FAC.  That failure
is fatal to their claims at this stage of the proceedings.

conspired with MyLife and other defendants to commit the conduct giving rise to the listed claims for relief; and (4) furnished the means for accomplishing the conduct giving rise to the listed claims for relief.  In addition, Plaintiffs alleged that they were personally liable "under an agency theory" and "under the theory of respondeat superior."

Such allegations, however, are precisely the formulaic recitations and naked assertions the Supreme Court expressly rejected in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.  *See Twombly*, 550 U.S. at 555 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do."); *Iqbal*, 129 S.Ct. at 1949 (a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement").

The Supreme Court has expressly held that, although allegations of legal conclusions may "provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 129 S.Ct. at 1950.  According to *Iqbal*, the first step in evaluating the sufficiency of the FAC to state any claims for relief against the Individual Defendants and Oak Investment is to identify those allegations "that are entitled to the assumption of truth."  *Id*. at 1951.  Bare assertions, such as Plaintiffs' legal conclusions and formulaic recitations of "personally performed [but unidentified] acts," "conspired," "aided and abetted," "under an agency theory," "furnishing the means for the accomplishment of the conduct," and "under the doctrine of respondeat superior," are properly ignored in evaluating whether the FAC states any claim for relief.  *Id*.  After these conclusory allegations are removed from consideration, the Court turns to the actual specific factual allegations – if any remain – in the "complaint to determine if they plausibly suggest an entitlement to relief."  *Id*.  While pleading the labels of liability, Plaintiffs do not even attempt to plead – even in a conclusory form – the elements that would support liability based on that label.  *See Fortaleza v. PNC Financial Services Group, Inc.* 642 F.Supp.2d 1012, 1018 (N.D. Cal. 2009) (striking conclusory claims for aiding and abetting and conspiracy due to failure to even articulate the elements of the forms of liability).

Here, the utter absence of any factual allegations concerning any actions taken by the Individual Defendants or Oak Investment leaves little to consider.  *See Kelly v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1058 (N.D. Cal. 2009) (dismissing aiding and abetting and conspiracy claims because pleading failed to "allege specific facts about how each

defendant conspired to commit the allegedly wrongful acts").  Plaintiffs have failed to allege the barest modicum of the factual basis for their legal conclusion that the Individual Defendants and Oak Investment are directly or indirectly liable for MyLife's alleged conduct – even if that conduct were actionable, which (as shown in the remaining portion of this memorandum) it is not.  *See Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1104 (E.D.Cal. 2010) (conclusory allegation that "lump[ed] all defendants together and fail[ed] to identify any specific act taken by any one of the named defendants" insufficient).  For example, Plaintiffs at best allege that Oak Investment raised funds for MyLife, but do not, because they cannot, allege any specific wrongful act perpetrated by Oak Investment or that Oak Investment acted with the requisite knowledge.  *See Casey v. U.S. Bank National Ass'n*, 127 Cal.App.4th 1138, 1145 (2005) ("California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted.").

Because Plaintiffs plead merely conclusory allegations nakedly asserting the legal theory for the purported liability of the Individual Defendants and Oak Investment, the absence of any "factual enhancement" as required under *Twombly* and *Iqbal*, the FAC cannot suffice.  *See Twombly*, 550 U.S. at 555 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do."); *Iqbal*, 129 S.Ct. at 1949 (a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'").

Even if Plaintiffs had alleged facts describing the specific conduct and actions taken by the Individual Defendants and Oak Investments that supported their contention that they were directly or indirectly liable, which they did not, Plaintiffs' claims should still be dismissed under Rule 12(b)(6).  Plaintiffs base their class action against all the Defendants on the foundation of the alleged conduct of MyLife.  As shown in the following, because that foundation crumbles, the claims for relief built on it cannot stand.

### C.   Plaintiffs Have Not Alleged Facts to State Any Claims Against MyLife.

#### 1.   Plaintiffs Have Not Stated A Claim For Violation Of The CLRA

Citing a litany of its subdivisions, Plaintiffs' allege that MyLife violated the CLRA by "disseminating false solicitations representing that 'someone' is looking for the recipient, and that

information about this 'someone' can be obtained from MyLife.com when that is not the case" and by "misrepresenting the prices and charges for its services and imposing unauthorized charges on Class members' accounts." [DK 27, at 14:17-21]  Plaintiffs, however, do not even attempt to plead facts from which anyone could link this conduct to any of the statutory subdivisions nor do they allege facts from which one could plausibly conclude any likelihood that a significant portion of consumers would likely be deceived by this alleged conduct.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("false or misleading advertising and other unfair business practices claim[s] must be evaluated from the vantage of a reasonable consumer."); *Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003) (must plead specific facts indicating that "it is probable that a significant portion of the general consuming public … acting reasonably in the circumstances, could be misled.").  When their conclusory allegations are stripped away, the pleading utterly fails to demonstrate even a possibility that the Plaintiffs were damaged by the alleged conduct as required by the CLRA.

> **(a)** **Plaintiffs' Allegations Of MyLife's Representations Regarding "Someone Looking For You" Are Insufficient To State A Claim Under The CLRA.**

Plaintiffs fail to alleged facts that representations that "someone" is looking for the recipient and that information about this "someone" can be obtained from MyLife.com violate Civil Code § 1770 (a)(2), (3), (5), (9), (14), and (16).  The FAC alleges nothing to support the conclusion that these statements misrepresent "the source, sponsorship, approval, or certification" of MyLife's services or "the affiliation, connection, or association with, or certification by, another".  *See* CAL. CIV. CODE § 1770 (a)(2) (any act "misrepresenting the source, sponsorship, approval, or certification of goods or services" is unlawful); § 1770 (a)(3) (any act "misrepresenting the affiliation, connection, or association with, or certification by, another" is unlawful).  The FAC does not allege facts establishing how these statements can plausibly mislead any reasonable consumer by "representing that a transaction confers, or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."  CAL. CIV. CODE § 1770 (a)(14).  Nor does the FAC allege facts that establish how these statements are a representation that MyLife supplied Plaintiffs access to its services "in accordance with a previous representation when it has not."  *See* CAL. CIV. CODE § 1770

(a)(16) (any act "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" is unlawful).[7]

Plaintiffs, therefore, are left to contend that these statements demonstrate that MyLife represented that its services provide "benefits … they do not have," or that MyLife advertised services intending not "to sell them as advertised."  *See* CAL. CIV. CODE § 1770 (a)(5) (any act "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have" is unlawful); § 1770 (a)(9) (any act "advertising goods or services with intent not to sell them as advertised" is unlawful).  Plaintiffs, however, do not allege facts establishing how the assertion that "someone is looking for you" – which Plaintiff do not and cannot allege is or was false – violates Section 1770(a)(5) or (9), other than through its conclusory allegation that MyLife's representation that "information about that someone" is available on MyLife's website "is not the case."  [DK 27 at 14:17-19].

Plaintiffs cannot meet their burden at this stage, especially where the general allegations are inconsistent with other specific allegations in the FAC.  In Paragraph 7 of the FAC, Plaintiffs allege that Clerkin obtained from the MyLife.com website information about those persons who were looking for John Clerkin.  [DK 27 at 7:12-13]  Similarly, Plaintiffs allege that Mendez obtained information about the persons looking for Veronica Mendez.  [DK 27 at 7:25-26]  Only after obtaining this information from MyLife did Plaintiffs conclude that they did not recognize any of the names of those persons looking for them.  Pleading an inability to recognize the identity of the persons looking for them is not equivalent to pleading that the identified persons were not in fact looking for them.[8]  Neither does this inability to recognize the persons looking for them mean that

---

[7] Section 1770(a)(16) makes illegal a representation that a service or good was "supplied in accordance with a ***previous representation*** when it has not."  CAL. CIV. CODE § 1770(a)(16) (emphasis added).  At a minimum, therefore, a CLRA violation under (a)(16) requires at least two representations, one before the supply of the good or service and one after that supply.

[8] Proof of this point comes from the common experience connected with a college or high school reunion.  Those planning such reunions will search for class members even if no relationship exists between the people.  Similarly, many have had the uncomfortable experience of someone approaching them by name, even though the recipient has no recollection of that person whatsoever.

---

13

information about such persons was not available on MyLife's website.  On the contrary, obtaining this information was a necessary predicate to Plaintiffs' ability to reach this conclusion.

Plaintiffs, therefore, cannot base a viable CLRA claim on any allegation that MyLife failed to provide them with information about the persons that were looking for them because Plaintiffs do not allege facts that establish such alleged wrongdoing – and indeed cannot do so without contradicting the factual allegations set forth in the FAC.

        **(b)**       **Plaintiffs' Allegations Of MyLife's Billing Practices Are Insufficient To State A Claim Under The CLRA.**

Plaintiffs allege that Defendants violated Civil Code § 1770 (a)(5),[9] (9), (14), and (16) by "misrepresenting the prices and charges for its services and imposing unauthorized charges on Class members' accounts."  [DK 27, at 14:20-21]  To support this conclusion, the FAC alleges only that MyLife charged its customers a sum greater than the services purchased, *i.e.* an overcharge.

The facts plead in the FAC, however, do not support the overcharge alleged.  The FAC reflects that MyLife charges its customers for the entire price for the full membership term upfront rather than on a monthly basis.  [DK 27 at 2:26-3:2; 3:7-8; 3:19-21; 4:2-3; 4:8-10; 4:11-13; 4:22-23; 5:3-5; 5:17-20]  While both Plaintiffs allege that their credit cards were charged more than the monthly equivalent of their subscription, the FAC is silent on the term of their respective subscriptions.  A simple calculation, consistent with Plaintiffs' allegations of MyLife's billing practice, however, shows that Clerkin was charged $155.40 for a one year subscription at $12.95/month and Mendez was charged $60 for MyLife's services rather than $5 – 1/12 of $60.  Plaintiffs do not allege – nor can they – that MyLife falsely or misleadingly represented that it would bill consumers on a monthly basis even though it intended to charge them a single upfront fee for the entire membership term.  Instead, FAC

---

[9] Plaintiffs fail to plausibly allege how MyLife's representation of its prices and charges constitute a "represent[ion] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have" CAL. CIV. CODE § 1770 (a)(5).  In addition, as shown above, Plaintiffs' failure to allege facts establishing that MyLife's presentation of its prices and charges are a representation that MyLife supplied Plaintiffs access to its services "in accordance with a previous representation when it has not" is a fatal flaw in its contention that those billing practices violate sub-section (a)(14).  *See* Section V.A. fn. 2.

rests on the conclusory allegation that MyLife overcharged Plaintiffs for the goods received, a conclusion not supported by the specific allegations in the FAC.  Stated more directly, the FAC as whole pleads that Plaintiffs received the subscription for which they were charged.[10]

### 2. Plaintiffs Have Failed To Allege That Plaintiffs Have Been Damaged By Any Purported Violation Of The CLRA.

Even if Plaintiffs could establish that Defendants' alleged conduct violated the CLRA, they have failed to allege that the alleged wrongful conduct caused them damage, as required for Plaintiffs to have standing as class representatives.  *See Meyer v. Sprint Spectrum, L.P.* 45 Cal.4th 634, 641 (2009) ("The statute speaks plainly about the use of an unlawful practice causing or resulting in some sort of damage.").

First, Plaintiffs fail to allege specific facts that establish that the alleged representations regarding "someone is looking for you" caused Plaintiffs to make these payments.[11]  Notably absent from the FAC is any allegation that information regarding those persons looking for Plaintiffs was not available unless Plaintiffs paid MyLife.

Second, Plaintiffs have not alleged any facts that establish that MyLife's representations concerning its pricing and payment actually deceived them in a manner that caused them harm.  Clerkin has not pled any cognizable harm arising from MyLife's pricing because MyLife reimbursed most of his payment and he does not – because he cannot – allege that the amount not reimbursed is not equivalent to the value he received from use of the site.  In particular, Clerkin does not allege that MyLife cancelled his access to its services at the same time it billed him for that access.  While he

---

[10] One can expect that Plaintiffs will ask the Court for leave to amend their pleading to allege that they were mislead by MyLife's subscription disclosure – *i.e.* that MyLife failed to adequately disclose that the company would charge its customers the entire price of a term subscription up front, even though subscriptions are disclosed for comparison purposes in terms of a fee per month.  Since the FAC does not plead this allegation, Defendants will not respond to it at this time other than by stating that, if such an amendment is sought, Plaintiffs should be expected to include in any amended pleading MyLife's pricing page, which in addition to providing the price comparison clearly discloses MyLife's billing policy.

[11] On its face, Plaintiffs' generalized allegation that these charges were incurred for "services they otherwise would not have incurred or paid" [DK 27 at 14:23-24] is a patent example of the boilerplate legal conclusion masquerading as an allegation rejected by *Twombly* and *Iqbal*.

objects to the absence of a full refund, the non-refunded portion is equivalent to a four month

subscription, and Clerkin does not plead that he was denied access to MyLife for the equivalent time

period that would be covered by the portion of his subscription that was not refunded.  Similarly,

Mendez does not allege that she failed to receive benefits of the annual membership to MyLife for the

entire year long term covered by her $60 payment.  As such, Plaintiffs have failed to allege specific

facts to establish that they did not receive the benefit of the bargain they struck with MyLife and were

thereby injured.  *See Buckland v. Threshold Enterprises, Ltd*. 155 Cal.App.4th 798, 809 (2007)

("plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that

the deception caused them harm.") *Cf. Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1591

(2008) (finding that plaintiffs who alleged that defendant unlawfully retained a percentage of

insurance premiums paid by plaintiffs failed to allege injury in fact because they received the value

paid for and thereby received the benefit of the bargain).

### D.    Plaintiffs Have Not Stated A Claim For Violation Of The UCL.

The UCL prohibits any business practice that is "unlawful, unfair, or fraudulent".  CAL. BUS.

& PROF. CODE § 17200; *see also Podolsky v. First Healthcare Corp*., 50 Cal.App.4th 632, 647 (1996).

In their Third, Fourth, and Fifth Count, Plaintiffs have alleged that MyLife's conduct has violated the

UCL under each of these three prongs.  [DK 27 at 17:2; 19:19; and 22:2]  For the reasons set forth

below, each of Plaintiff's claims for relief under the UCL is deficient and must be dismissed.

### 1.    Plaintiffs Do Not Allege Facts Sufficient To Establish Standing For UCL.

According to the California Supreme Court, "To satisfy the narrower standing requirements

imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property

sufficient to qualify as injury in fact, *i.e*., *economic injury* and (2) show that that economic injury was

the result of, *i.e*., *caused by*, the unfair business practice or false advertising that is the gravamen of

the claim." *Kwikset Corp. v. Sup. Court*, 51 Cal.4th 310, 322 (2011) (emphasis in original).[12]

Consistent with Article III of the United States Constitution, plaintiffs in an UCL action must allege

---

[12] Proposition 64 was passed by California voters in 2004 in order to "confine standing to those
actually injured by a defendant's business practices".  *Kwikset Corp*, 51 Cal.4th at 321.

1  and prove that "they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair

2  conduct, … [which] must be 'an invasion of a legally protected interest which is (a) concrete and

3  particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Birdsong v. Apple, Inc*.,

4  590 F.3d 955, 960 (9th Cir. 2009).  "'Particularized' in this context means simply that 'the injury must

5  affect the plaintiff in a personal and individual way.'" *Kwikset*, 51 Cal.4th at 323.  Moreover, "the

6  Proposition 64 requirement that the injury be economic renders standing under section 17204

7  substantially narrower than federal standing under article III, section 2 of the United States

8  Constitution…." *Id*. at 324.

9       Unless Plaintiffs can establish that the specific unfair, illegal, or fraudulent business practices

10  in which they allege MyLife engaged caused Plaintiffs to suffer a personal and individual economic

11  injury, their UCL claims cannot survive.  Although California law does not require each member of

12  the purported class meet this standard, each class representatives in an UCL class action must meet

13  these standing requirements for the action to proceed.  *In re Tobacco II Cases*, 46 Cal.4th 298, 306

14  (2009) .  Because neither named Plaintiff has met this standard, each of their UCL claims must be

15  dismissed.

16       As shown in Section II, each of Plaintiffs' UCL claims are based upon their allegations that

17  MyLife represented that "someone is looking for you" and that MyLife overcharged them.  [DK 27 at

18  14:17-21; 17:9-14; 19:26-27; 22:9-11].  Plaintiffs, however, have not alleged – nor can they – that the

19  representation "someone is looking for you" was false.  Rather Plaintiffs allege only that both of them

20  registered with the site and discovered that they did not know the persons looking for them.  [DK 27

21  at 7:7-25]  On its face, Plaintiffs' determination that they did not recognize the name of those people

22  identified does not mean that no one was, in fact, looking for individuals named John Clerkin and

23  Veronica Mendez.  Thus, Plaintiffs cannot establish that they suffered any cognizable harm arising

24  from their actual reliance on this representation.  *See In re Tobacco Cases*, 46 Cal.4th at 326 (class

25  action plaintiff under UCL must allege that defendant's misrepresentation were an immediate cause of

26  the plaintiff's conduct that resulted in plaintiff's actual injury).  As a result, Plaintiffs cannot establish

27  the requisite standing to bring a UCL claim based upon MyLife's representation that "someone is

28  looking for you".

Neither can Plaintiffs rely on their allegation that MyLife misrepresented its pricing for its service to establish the requisite standing to bring its UCL claims.  First, Clerkin cannot plead any cognizable harm arising from MyLife's pricing because MyLife reimbursed most of his payment and he does not – because he cannot – allege that the unreimbursed amount is not equivalent to the value he received from use of the site.  *See Peterson v. Cellco Partnership*, 164 Cal.App.4th at 1591 (finding that plaintiffs who alleged that defendant unlawfully retained a percentage of insurance premiums paid by plaintiffs failed to allege injury in fact because they received the value paid for and thereby received the benefit of the bargain).  Moreover, although Mendez pleads that MyLife charged her credit card for $60 when she believed she would be charged five dollars for use of the site, in other places the FAC alleges that MyLife charges customers for the entire term of their service at the time of sign up, in Mendez's case one year.  Plaintiffs do not plead that MyLife fails to adequately disclose this term of service.  Neither does the FAC allege that a reasonable consumer viewing the site would not understand this term of service.  Plaintiffs, therefore, have not alleged sufficient facts to establish that they suffered any financial harm as a result of MyLife's pricing methodology.  *See Baxter v. Intelius*, 2010 U.S. Dist. LEXIS 104218, at *13 (C.D. Cal. Sept. 16, 2010) (holding that plaintiffs who alleged they were deceived into enrolling in monthly membership program via an interstitial website failed to contend that they actually relied on statements by defendant and therefore failed to state a claim under the UCL) citing *In re Tobacco Cases II*, 46 Cal.4th at 306.

Finally, Plaintiffs can bring no claim based on the allegation that MyLife improperly accesses its customers' address books because neither Clerkin nor Mendez allege that their address books were accessed in this way.

Because Plaintiffs have failed to allege facts that support a conclusion that they have suffered an injury in fact and that they have lost money or property as a result of the claimed unfair competition, they lack the requisite standing to bring this purported class action under the UCL.  *See Birdsong,* 590 F.3d at 959 ("To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition.").  The Court, therefore, should dismiss each of Plaintiffs' claims for relief under the UCL.

1

2.      **Plaintiffs Have Failed To Allege Sufficient Facts To Establish A Claim For**

2

**Relief Under Any of The Three Prongs of the UCL**

3

Even if Plaintiffs could establish standing to bring their UCL claims, the FAC falls short of

4

alleging facts that would plausibly support a claim under any of the three statutory prongs set forth in

5

section 17200.

6

(a)      **Plaintiffs Do Not State A Claim Under the Unlawful Practices**

7

**Prong.**

8

Under the "unlawful" prong of the UCL, Plaintiffs must allege and prove a violation of

9

another law to state a cause of action under the UCL.  *See Berryman v. Merit Property Mgmt., Inc.*,

10

152 Cal.App.4th 1544, 1554 (2007) ("Thus, a violation of another law is a predicate for stating a

11

cause of action under the UCL's unlawful prong.").  In the FAC, Plaintiffs base their Fourth Cause of

12

Action – for violation of the unlawful practices prong of the UCL – solely on their allegations that

13

MyLife violated the CLRA.  FAC ¶ 74.  Plaintiffs' Fourth Cause of Action, therefore, stands or falls

14

with the CLRA claim.  As previously established, because Plaintiffs have failed to allege facts

15

sufficient to establish that the conduct of MyLife (or of any of the other Defendants) violates the

16

CLRA, Plaintiffs claim under this prong of the UCL must fall.

17

(b)      **Plaintiffs Do Not State A Claim Under the Unfair Practices Prong.**

18

Plaintiffs' UCL claim based upon the "unfair practices" prong of the UCL is equally

19

untenable.  Plaintiffs allege three bases on which they contend MyLife's conduct is "unfair" under the

20

UCL.[13]   Plaintiffs allege that MyLife's conduct "violated various laws and policies recognized by the

21

California Legislature and the California courts," with the only law mentioned being the CLRA.

22

Plaintiffs also allege that the "gravity of the harms imposed on consumers" outweighs the "utility of

23

24

25

26

27

28

---

[13] The UCL does not define the term "unfair" as used in section 17200.  "California law is currently unsettled with regard to the correct standard to apply to consumer suits alleging claims under the unfair prong of the UCL."  *Ferrington v. McAfee, Inc.* L 3910169, 11 -12 (N.D.Cal. 2010). Nevertheless, recently-decided cases addressing the application of the California Supreme Court's analysis and holding of its meaning within the context of a suit involving competitors, set forth in *Cel-Tech Comm. V. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) offer well-reasoned analyses for how the Supreme Court would likely rule on this issue in a suit involving consumers.

MyLife's conduct" and that MyLife's practices are "oppressive, unscrupulous or substantially injurious to consumers."

As demonstrated previously, Plaintiffs allegations fail to state a claim for violation of the CLRA.  Plaintiffs, therefore, have not alleged facts to support any conclusion that any conduct by Defendants is unfair based upon any underlying constitutional, statutory or regulatory provision to which it may be tethered.  *See Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1366 (2010) (granting demurrer on UCL claim based on unfairness prong when plaintiff failed to "allege the conduct is tethered to any underlying constitutional, statutory or regulatory provision").  As shown below, Plaintiffs cannot rely on any generalized and unidentified "laws and policies" as a basis for this claim.  Neither can Plaintiffs salvage this claim by alleging MyLife's conduct as unfair based upon their balancing of the harms and utility or their pejorative labeling of that conduct.

In defining the term "unfair" in *Cel-Tech Comm. V. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, (1999), the California Supreme Court expressly rejected as "too amorphous" prior attempts by California Courts of Appeal to define "unfair" through a balancing test or through reference to unidentified "public policies" or labeling the practice as "oppressive, unscrupulous or substantially injurious to consumers".  *Cel-Tech*, Cal.4th at 184-85.  The balancing test and labeling relied upon by Plaintiffs in the FAC are virtually verbatim to those expressly rejected by the California Supreme Court in *Cel-Tech*.

Importantly, both cases that adopted the definitions or tests rejected by the *Cel-Tech* court involved UCL claims brought by consumers, not competitors.  *See State Farm & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1104 (1996) (finding insureds had stated UCL claim against insurers under the unfair practices prong applying the balancing test of weighing "the utility of the defendant's conduct against the gravity of the harm to the alleged victim."); *People v. Casa Blanca Convalescent Homes, Inc*., 159 Cal.App.3d 509, 530 (1984) (affirming judgment in favor of the state on behalf of the patients of defendant nursing home in unfair business practices action when defendant's conduct "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.").  Before *Cel-Tech*, therefore, the determination of whether an alleged practice was "unfair" under the UCL was made in accordance

1    with these two tests – whether the action was brought by a competitor or a consumer.  In *Cel-Tech*, the

2    Court addressed an UCL claim involving competitors.  *Cel-Tech*, Cal. 4th at 169-70.  As such (and as

3    the Court expressly stated), the Court's holding that to state an UCL claim under the "unfair" prong,

4    the unfairness of the practice must be tethered to some legislatively declared policy was limited to

5    actions brought by a competitor alleging anticompetitive behavior.  *Id*. at 187, fn. 12.

6            Nevertheless, this limitation does not mean that the tests adopted in *State Farm* and *Casa*

7    *Blanca* remained any more viable in actions brought by consumers.  Such a conclusion ignores the

8    Supreme Court's unqualified rejection of these two consumer actions.  *Cel-Tech*, Cal.4th at 184.  The

9    logical flaw in concluding that the Supreme Court would find a balancing test "too amorphous" and

10   therefore inadequate in an action brought by a competitor, while finding the same balancing test to be

11   "too amorphous" and yet adequate in an action brought by a consumer has been recognized by both

12   California Courts of Appeal and District Courts within the Ninth Circuit.  *See Durrell*, 183

13   Cal.App.4th at 1365-66; *Sanchez v. Bear Stearns Residential Mortg. Corp*., 2010 WL 1911154, 7

14   (S.D.Cal. 2010) ("The *Cel-Tech* court found, and this Court agrees, that the balancing test to

15   determine unfairness is 'too amorphous and provide[s] too little guidance to the courts.'"); *Morris v.*

16   *BMW of North America, LLC*, 2007 WL 3342612, *8 (N.D.Cal. 2007) ("Although the California

17   Supreme Court did not reach the issue of consumer cases, the rationale of *Cel-Tech* nonetheless

18   compels the conclusion that the unfairness prong must be tethered to some legislative policy"); *Van*

19   *Slyke v. Capital One Bank*, 2007 WL 3343943, *11 (N.D.Cal. 2007) ("Although the California

20   Supreme Court did not reach the issue of consumer cases, the rationale of *Cel-Tech* nonetheless

21   compels the conclusion that the unfairness prong must be tethered to some legislative policy,

22   otherwise the courts will roam across the landscape of consumer transactions picking and choosing

23   which they like and which they dislike."); *Simila v. American Sterling Bank*,  2010 WL 3988171, 6

24   (S.D.Cal.,2010) ("The Court finds that the 'tether' test is more in line with the California Supreme

25   Court's reasoning in *Cel-Tech*. The *Cel-Tech* court found, and this Court agrees, that the balancing test

26   to determine unfairness is 'too amorphous and provide[s] too little guidance to the courts.'"); *Orozco*

27   *v. DHI Mortg. Co. LTD, LP*, 2010 WL 2757283, 9 (S.D.Cal. 2010) ("Although whether this

28

1    "tethering" test applies to consumers allegations of unfair competition is not settled, this Court finds

2    that the "tether" test is most in line with the California Supreme Court's reasoning in *Cel-Tech*.").

3              Under current California law, therefore, the California Supreme Court is more likely than not

4    to reject any balancing test to define "unfair" in a consumer action or to ask courts to determine

5    whether any alleged conduct is "oppressive, unscrupulous, or substantially injurious to consumers".

6    On the contrary, the more probable conclusion of the Supreme Court will be to require that the

7    allegedly unfair practice be tethered to an underlying law or legislatively declared policy.  Because

8    Plaintiffs have not alleged any violation of the CLRA – the only legislatively declared policy they

9    identify, the FAC does not state a claim for relief under the unfairness prong of the UCL.[14]

10             **(c)      Plaintiffs Do Not State A Claim Under the Fraudulent Practices**

11             **Prong.**

12             Finally, Plaintiffs cannot prevail on their UCL claim based on Defendants' alleged fraudulent

13   practices.  To state a claim for unfair competition under the fraudulent practices prong, Plaintiffs must

14   meet the same "reasonable consumer" standard required under the CLRA, discussed above.  *See*

15   *Lavie*, 105 Cal.App.4th at 508.  Plaintiffs rely on three alleged practices of MyLife as support for their

16   UCL claim sounding in fraud.  First, Plaintiffs allege that MyLife "disseminated false solicitations

17   representing that 'someone' is looking for the recipient, and that information about this 'someone' can

18   be obtained from MyLife.com when that is not the case."  [DK 27 at 17:9-11]  Second, Plaintiffs

19   allege that MyLife "misrepresent[ed] the prices and charges for its services and imposing

20   unauthorized charges on Class members accounts."  [DK 27 at 17:12-14]  Third, Plaintiffs allege

21

22

23   _____

[14] *Lozano v. AT & T Wireless Services, Inc.* 504 F.3d 718 (9th Cir. 2007) does not require this Court
24   to find differently.  In *Lozano*, the Ninth Circuit only determined that, pending clarification by the
     California Supreme Court on the issue, it was not reversible error for a District Court addressing a
25   consumer-based UCL action to apply either the tethering test or the balancing test.  *Id.* 504 F.3d at
     736.  Subsequent to *Lozano*, numerous District Courts in California have found that the tethering test
26   was more in conformity with the reasoning of the Court in *Cel-Tech*.  See those cases cited in
     preceding paragraph.  In any case, even under the balancing test, Plaintiffs – as shown in Section D.1
27   – have failed to allege facts that would establish that they suffered any economic harm resulting from
     MyLife's alleged conduct.  That alleged conduct, therefore, can neither be outweighed by any alleged
28   harm caused by it nor be correctly labeled as oppressive, unscrupulous, or substantially injurious to
     consumers.

MyLife "us[ed] false pretenses to hack into or otherwise gain access to the address books of members of the Class and Consumer Subclass." [DK 27 at 17:15-17].

As shown above in connection with Plaintiffs' defective CLRA claim, Plaintiffs have failed to allege sufficient facts to establish that the alleged representations made to them by MyLife were, or are, false or misleading. *See Intelius*, 2010 U.S. Dist. LEXIS 104218, at *12 (holding that website that disclosed the terms of the agreement and which required Plaintiffs to take affirmative steps to register for the service was not deceptive as a matter of law). While Plaintiffs add the hacking allegation to their UCL claim, Plaintiffs do not allege that MyLife accessed either of their accounts, and these Plaintiffs cannot maintain a claim predicated on this unfounded allegation on behalf of putative class. Under the reasonable consumer standard, Plaintiffs have not stated a claim for relief for violation of the fraudulent and deceptive practices prong of the UCL. *Id*. at *15-16.

**E.      Plaintiffs Have Not Stated A Claim For Money Had And Received.**

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" *Schultz v. Harney*, 27 Cal.App.4th 1611, 1623 (1994). A count for money had and received is grounded in "the unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action she must show that a definite sum, to which she is justly entitled, has been received by defendant." *Bastanchury v. Times-Mirror Co*., 68 Cal. App. 2d 217, 236 (1945). Money had and received "lies for money paid by mistake, or on a consideration which happens to fail, or through imposition, extortion, or oppression, or where any undue advantage is taken of the plaintiff's situation." *Philpott v. Superior Court*, 1 Cal. 2d 512, 519 (1934).

Here, Plaintiffs allege as the sole basis for its count for money had and received that "MyLife.com has improperly billed Plaintiffs and Class members for services that it promised by did not provide" and that as a result "of these improper billings, defendants have received monies from Plaintiffs and Class members, and defendants have no right thereto." [DK 27, at 12:8-11] Plaintiffs' count for money had and received also incorporates by reference all the factual allegations set forth in Paragraphs 1-27 of the FAC. [DK 27, at 12:5-6] Thus, the "improper billings" that serves as the foundation for Plaintiffs' common count for money had and received are those billing practices

1    described in Paragraphs 7 and 8 of the FAC.  [DK 27, at 7:11-16, 24-25]  In addition, Plaintiffs seek

2    the same recovery under the common count as they do under the remaining counts based on the

3    purported violations of the CLRA and UCL.  [DK 27, at 14:6-10; 16:24-28; 19:15-18; 21:26-22:1;

4    24:13-16; 24:28-25:4]

5           The viability of Plaintiffs claim for money had and received, therefore, depends on the same

6    factual allegations upon which Plaintiffs rely for their remaining specific counts.  Plaintiffs' common

7    count, therefore, must be evaluated in connection with those facts.  *Orloff v. Metropolitan Trust Co*.,

8    17 Cal. 2d 484, 489 (1941) ("The appellant states as his next cause of action the common count of

9    money had and received.  But this count, following allegations setting out in detail the facts upon

10   which appellant relies, must be considered in connection with those facts.").  California law has long

11   held that "if plaintiff is not entitled to recover under one count in a complaint wherein all the facts

12   upon which his demand is based is specifically pleaded, it is proper to sustain a demurrer to a common

13   count set forth in the complaint, the recovery under which is obviously based on the set of facts

14   specifically pleaded in the other count."  *Hays v. Temple*, 23 Cal.App.2d 690, 695 (1937); *see also Del

15   E. Webb Corp. v. Structural Materials Co*., 123 Cal. App. 3d 593, 601 (1981) (holding that the

16   validity of claim for money had and received based on facts alleged in support of specifically pleaded

17   counts "is dependent upon whether a basis of recovery is adequately set forth in the other causes of

18   action.").  Because Plaintiffs count for money had and received stands or falls on the viability of its

19   claims under the patently deficient CLRA and the UCL, Plaintiffs have failed to state a claim for

20   money had and received.  *See McBride v. Boughton* 123 Cal.App.4th 379, 394-395 (2004) (holding

21   that when a common count is used as an alternative way of seeking the same recovery demanded in a

22   specific cause of action and is based on the same facts, the common count must stand or fall on the

23   viability of those specific claims); *Berryman v. Merit Property Management, Inc*.  152 Cal.App.4th

24   1544, 1559-1560 (2007) (same).

25          **F.      Plaintiffs Have Not Stated A Claim For Unjust Enrichment or Restitution.**

26          California does not recognize a cause of action for unjust enrichment.  *See Melchior v. New

27   Line Productions, Inc*., 106 Cal.App.4th 779, 793 (2003) ("there is no cause of action in California for

28   unjust enrichment"); *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1370 (2010) (same).  Rather,

it has been considered to be "an attempt to plead a cause of action giving rise to restitution." *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004). California courts have recognized several bases for a cause of action seeking restitution. The Court in *McBride* identified two such bases: (1) restitution in lieu of breach of contract damages when an express contract resulted from fraud or is otherwise unenforceable and (2) restitution when "the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Id*.

Plaintiffs base their unjust enrichment/restitution claim on the same allegations of bills and charges for services MyLife promised but failed to provide, and incorporate every other allegation set forth in the FAC. [DK 27, at 24:18-24] On its face, therefore, Plaintiffs' claim for restitution sounds in the same allegedly fraudulent conduct on which they base each of their other claims for relief. As demonstrated above, Plaintiffs have failed to allege the requisite specific facts to establish that any of the Defendants engaged in any fraudulent acts that harmed Plaintiffs. Plaintiffs' equitable claim here is no more viable than its flawed claims under the CLRA or the UCL.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss each claim for relief against Defendants contained in Plaintiffs' First Amended Complaint.

DATED:  April 12, 2011                Respectfully submitted,

By _____/S/ John Shaeffer_____
John Shaeffer
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Fax: (310) 789-4601
Email: jshaeffer@lathropgage.com
New Attorneys for MYLIFE.COM INC. and
OAK INVESTMENT PARTNERS; JEFFREY
TINSLEY, RACHEL GLASER, W. DWIGHT
GORALL, ARMEN AVEDISSIAN, MICHAEL
SOH, and SHARYN ELES