LATHROP & GAGE LLP
John Shaeffer (Bar No. 138331)
jshaeffer@lathropgage.com
Carole Handler (Bar No. 129381)
chandler@lathropgage.com
Randy Merritt (Bar No. 187046)
rmerritt@lathropgage.com
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Fax: (310) 789-4601

Attorneys for Defendants
MYLIFE.COM INC. and OAK INVESTMENT PARTNERS

LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
lawofcsrjp@aol.com
1644 North Orange Grove Avenue
Los Angeles, CA 90046
Telephone:    (323) 882-8225
Fax:    (323) 882-8208

Co-Counsel for Defendant, MYLIFE.COM INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JOHN CLERKIN and VERONICA MENDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYLIFE.COM INC., and OAK INVESTMENT PARTNERS,<br><br>Defendants. | Case No. 4:11-CV-00527-CW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(6) OF DEFENDANT MYLIFE.COM INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CYNTHIA MCCRARY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYLIFE.COM INC.,<br><br>Defendant. | Date:  September 1 , 2011<br>Time:  2:00 p.m.<br>Judge: Hon. Claudia Wilken |
| CODY BROCK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYLIFE.COM INC.,[1]<br><br>Defendant. | |

---

[1] For purposes of this Motion to Dismiss, Defendants continues with Plaintiffs' unusual caption for this case, and trust that Plaintiffs will fix it in the future.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 1, 2011, at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 2, Fourth Floor of the above-entitled Court located at 1301 Clay Street, Oakland, California 94612, Defendants MyLife.Com Inc. ( "MyLife") and Oak Investment Partners ("Oak Investment") will and hereby do move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing each claim for relief against Defendants contained in the Consolidated Amended Class Action Complaint ("CACC"), filed by Plaintiffs John Clerkin, Victoria Mendez, Cynthia McCrary, and Cody Brock ("Plaintiffs"). To the extent that the Court deems it inappropriate to dismiss any allegation contained in the CACC pursuant to Rule 12(b)(6) because such a dismissal would not effectuate the dismissal of an entire cause of action, Defendants will subsequently move the Court to dismiss such allegations pursuant to Rule 56 of the Federal Rules of Civil Procedure which allows the Court to adjudicate as a matter of law and dismiss allegations from a case even if their dismissal would not result in the dismissal of an entire cause of action.

Defendants' Motion is made on the following grounds:

1.     Plaintiffs' class allegations should be dismissed because Plaintiffs fail to plead with any plausibility that the commonality and typicality essential in this case to support class certification could possibly exist or ever be proven with respect to class allegations. To the extent that Plaintiffs plead a plausible class claim with respect to any one or more of the categories of conduct they challenge, the Court should dismiss all those other categories of conduct for which there is no basis for certification.

2.     Plaintiffs Third Cause of Action for violation of the Consumer Legal Remedies Act should be dismissed in its entirety because it fails allege a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

3.  Plaintiffs' Fourth Cause of Action for violation of the fraudulent and deceptive practices prong of California's Statutory Unfair Competition Law ("UCL") should be dismissed in its entirety because it fails to allege a claim that is plausible on its face.  To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

4.  Plaintiffs' Fifth Cause of Action for violation of the unlawful prong of the UCL should be dismissed in its entirety because it fails to allege a claim that is plausible on its face.  To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

5.  Plaintiffs' Sixth Cause of Action for violation of the unfair prong of the UCL should be dismissed in its entirety because it fails to allege a claim that is plausible on its face.  To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

6.  Plaintiffs' Seventh Cause of Action for restitution/unjust enrichment should be dismissed in its entirety because it fails to allege a claim that is plausible on its face.  To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

7.  Plaintiffs' First Cause of Action for Money Had And Received should be dismissed in its entirety because it fails to allege a claim that is plausible on its face.  To the extent there exist some plausible allegations, the Court should dismiss on the merits those claims or other allegations that are not plausible on their faces.

The foregoing grounds are addressed in detail in the attached Memorandum of Points and Authorities.  This Motion is based on this Notice, the attached Memorandum of Points and Authorities, on all papers, pleadings, records and files in this case, on all other matters of which judicial notice may be taken, and on such other evidence and/or argument as may be presented to the Court on the hearing of this Motion.

1      Defendants respectfully request that the Court dismiss each claim for relief against MyLife

2    contained in the CACC.

3

4    DATED:  July 28, 2011                    Respectfully submitted,

5                                              By _____/S/ John Shaeffer_____
                                                  John Shaeffer
6                                                 LATHROP & GAGE LLP
                                                  1888 Century Park East, Suite 1000
7                                                 Los Angeles, CA 90067
                                                  Telephone: (310) 789-4600
8                                                 Fax: (310) 789-4601
                                                  Email: jshaeffer@lathropgage.com
9                                                 New Attorneys for MYLIFE.COM INC. and
                                                  OAK INVESTMENT PARTNERS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................................1

II.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT .......................................................3

III.  LEGAL ARGUMENT ...........................................................................................................7

A.   A Motion Brought Pursuant to Rule 12(b)(6) Is The Appropriate Vehicle To Eliminate Causes of Action, Class Allegations And Other Contentions Whose Lack Of Legal Merit Is Evident On The Face Of A Pleading..........................................................................................................7

B.   The Patent Inconsistency Among Plaintiffs' Own Allegations Demonstrates That No Class Could Ever Be Certified Here. ...........................................................................................................9

      1. Plaintiffs Cannot Plead Common Question That Could Generate Meaningful Common Answers With Respect MyLife's Alleged Solicitations That Someone Is Looking For You........12

2.   Plaintiffs Cannot Plead Common Question Relating To MyLife's Billing Practices. .................13

3.   Since Not One Of The Plaintiffs Allege That MyLife Hacked Into Their Address Books, Plaintiffs Cannot Maintain Class Allegations Based on Any Cause Of Action Founded Upon Such A Claim..................................................................................................................14

C.   Plaintiffs' Individual Claims Fail As A Matter Of Law And Should Be Dismissed....................14

1.   Plaintiffs Fail To Plead Any Actionable CLRA Claim. ..............................................................14

2.   Plaintiffs Fail To Plead Any Actionable Claim Under The UCL...................................................19

D.   Plaintiffs Have Not Stated A Claim For Unjust Enrichment/Restitution. ....................................24

IV.   CONCLUSION ....................................................................................................................24

1

<u>**Table of Authorities**</u>

2

**Cases**

3

*Anaya Hill v. Roll International Corp.*,

4

195 Cal.App.4th 1295 (2011) ...............................................................16, 21

5

*Ashcroft v. Iqbal*,

129 S.Ct. 1937 (2009) ...................................................................................7

6

*Bardin v. DiamlerChrysler Corp*,

7

136 Cal.App.4th 1255 (2006) ......................................................................23

8

*Baxter v. Intelius*,

9

2010 WL 3791487 (C.D. Cal. 2010) ......................................................16, 21

10

*Becker v. Wells Fargo Bank*,

11

2011 WL 1103439 (E.D. Cal. March 22, 2011) .............................................9

12

*Berryman v. Merit Property Mgmt., Inc.*,

13

152 Cal.App.4th 1544 (2007) ................................................................22, 24

*Birdsong v. Apple, Inc.*,

14

590 F.3d 955 (9th Cir. 2009).......................................................................22

15

*Boucher v. First American Title Insurance Co.*,

16

2011 WL 165598 (W.D. Wash. 2011) .........................................................13

17

*Brazil v. Dell, Inc.*,

18

585 F.Supp.2d 1158 (N.D. Cal. 2008) ...................................................10, 13

19

*Bryant v. Food Lion, Inc.*,

774 F.Supp. 1485 (D.S.C. 1991) .................................................................10

20

*Califano v. Yamasaki*,

21

442 U.S. 682 (1979)......................................................................................9

22

*Californians for Disability Rights v. Mervyn's, LLC*,

23

39 Cal.4th 223 (2006) .................................................................................19

24

*Colgan v. Leatherman Tool Group Inc.*,

135 Cal.App.4th 663 (2006) ........................................................................15

25

*Coto Settlement v. Eisenberg*,

26

593 F. 3d 1031 (9th Cir. 2010)......................................................................4

27

*Drum v. San Fernando Valley Bar Ass'n*,

28

182 Cal.App.4th 247 (2010) ........................................................................23

*East Texas Motor Freight System, Inc. v. Rodriguez,*
   431 U.S. 395 (1977) ..................................................................................................14

*Ford v. Hotwire,*
   2007 WL 6235779 (S.D. Cal. 2007) ...................................................................16, 21

*Freeman v. Time, Inc.*
   68 F.3d 285 (9th Cir. 1994)..........................................................................15, 18, 21

*Garaux v. Pulley,*
   739 F.2d 437 (9th Cir. 1984)...................................................................................9

*General Telephone Co. v. Falcon,*
   457 U.S. 147 (1982) ................................................................1, 9, 10, 11, 14

*Gregory v. Albertson's Inc.,*
   104 Cal.App.4th 845 (2002) ...................................................................................23

*In re Tobacco II Cases,*
   46 Cal.4th 298 (2009) ...............................................................................................20

*In re Wall-Mart Stores, Inc.,*
   505 F.Supp.2d 609 (N.D. Cal.2007) .......................................................................8

*Kamm v. California,*
   509 F.2d 205 (9th Cir. 1975)...............................................................................8, 10

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)..........................................................................14, 23

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005)..........................................................................16, 21

*Kwikset Corp. v. Superior Court,*
   51 Cal.4th 310 (2011) ......................................................................................15, 19

*Lavie v. Procter & Gamble Co.,*
   105 Cal.App.4th 496 (2003) ...................................................................................15

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001)....................................................................................4

*Marilao v. McDonald's Corp.,*
   632 F.Supp.2d 1008 (S.D. Cal. 2009) ...................................................................24

*Matsumara v. Rideout Memorial Hospital,*
   (E.D. Cal. June 11, 2010)..........................................................................................8

iv

*Meyer v. Sprint Spectrum L.P.*,
 45 Cal.4th 634 (2009) ..........................................................................................15

*Navarro v. Block*,
 250 F.3d. 729 (9th Cir. 2001)................................................................................7

*Pfizer Inc. v. Superior Court*,
 182 Cal.App.4th 622 (2010) ................................................................................12

*Rhodes v. Placer County*,
 2011 WL 1302316 (E.D. Cal. March 11, 2011) ...................................................9

*Rubio v. Capital One Bank*,
 613 F.3d 1195 (9th Cir. 2010)..............................................................................23

*Schilling v. Kenton County*,
 2011 WL 293759 (E.D. Ky 2011).........................................................................10

*Schlesinger v. Reservists Committee to Stop the War*,
 418 U.S. 206 (1971) ..............................................................................................14

*Silicon Image, Inc. v. Analogix Semiconductor, Inc*,
 642 F.Supp.2d 957 (N.D. Cal. 2008) ...................................................................15

*Swift v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007).................................................................................16

Thompson v. Paul,
 657 F.Supp.2d 1113 (D. Ariz. 2009)......................................................................8

*Vinole v. Countrywide Home Loans, Inc.*,
 571 F.3d 935 (9th Cir. 2009).................................................................................10

*Walker v. Hughes Communications, Inc.*,
 682 F.Supp.2d 1031 (N.D. Cal. 2010) ...................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. __,  131 S.Ct. 2541 (2011) ...................................................1, 9, 10, 11, 12, 13

*Walter v. Hughes Communications*,
 682 F.Supp.2d 1031 (N.D. Cal. 2010) .................................................................24

*Whittleston, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010).................................................................................7

**Statutes & Other Authorities**

Cal.Bus.Pro.Code § 17200 .......................................................................................19

Cal.Civ.Code § 1170 .................................................................................................14

Fed.R.Civ.Pro. 23 ....................................................................................................10

Fed.R.Civ.Pro. 56 ......................................................................................................8

Nagareda, *Class Certification in the Age of Aggregated Proof*,
    84 N.Y.U.L.Rev. 97 (2009) ..........................................................1, 9, 11, 13

MOTION TO DISMISS UNDER FRCP 12(b)(6) – [Case No. 4:11-CV-00527-CW]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

By their motion, Defendant MyLife, Inc. ("MyLife") and Oak Investment Partners ("Oak Investment") first ask this Court to dismiss the class allegations from Plaintiffs' Consolidated Amended Class Action Complaint ("CACC") because no set of facts exist, or could possibly ever exist, consistent with allegations contained therein that could support the commonality and typicality necessary for class certification.[2]   Second, MyLife asks the Court to dismiss each and every one of Plaintiffs' individual causes of actions because taking the allegations of the pleading as a whole, the claims made are simply not plausible.

The Supreme Court recognizes this Court's authority to dismiss class allegations where the "issues are plain enough from the pleadings to determine."[3]  The CACC presents this Court with such an atypical pleading.  The patent inconsistencies among the named Plaintiffs' own individual allegations demonstrate – even at the pleading stage –  that there can be no "common answers" to relevant common questions that are "apt to drive the resolution of th[is] litigation."[4]

- While Plaintiffs assert as a common question among potential class members their receipt of an allegedly false solicitation from MyLife stating that "'someone' *is* searching for them," [DK 68 at 11:6-7 (emphasis added)] two of the named plaintiffs, Cynthia McCrary and Cody Brock, allege that they subscribed to MyLife after they "saw an ad stating that someone *could be* looking for them" [DK 68 at 9:5-17 (emphasis added)].

- While Plaintiffs assert as a common question whether "MyLife misrepresented its pricing and/or placed unauthorized charges on subscribers' accounts," neither McCrary nor Brock

---

[2] Oak Investment brings a separate motion to dismiss based on Plaintiffs' failure to allege any specific facts with respect to any wrongdoing by the company.  While Plaintiffs heeded the Court's direction by dropping from its pleading the individual officers and employees of MyLife, Plaintiffs – for reasons only known to themselves –continue to press claims against Oak Investment irrespective of their inability to plead anything specific.

[3] *General Telephone Co. v. Falcon*, 457 U.S. 147, 160 (1982).

[4] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2551 (2011) quoting Nagareda, *Class Certification in the Age of Aggregated Proof*, 84 N.Y.U.L.Rev. 97, 131-132 (2009).

alleges that they were misled by MyLife's pricing or that MyLife improperly charged their credit cards.  [DK 68 at 11:8-9]

- While Plaintiffs assert that a common harm suffered by each class member stems from "MyLife's use [of] false pretense to hack into or otherwise gain access to the address books of members of the Class," not one of the named Plaintiffs alleges that their address books have been so hacked.  [DK 68 at 11:12-13]

The mere compilation of Plaintiffs' disparate and separate allegations as now collected in the CACC does not create commonality.  Nor does it substantiate their individual claims, which fail in this new guise.

**First**, neither McCrary nor Brock can plead a cause of action under the Consumer Legal Remedies Act ("CLRA") because neither alleges that he received solicitations from MyLife "representing that 'someone' is looking for the recipient" or that MyLife misrepresented to them "the prices and charges for its services [or] impos[ed] unauthorized charges on" their accounts.  [DK 68 at 13:12-16]  Because Plaintiffs plead commonality with respect to MyLife's billing practices, but reasonable customers like McCrary and Brock were not misled by the billing terms set forth on MyLife's website, as a matter of law Plaintiffs Clerkin and Mendez cannot claim that they were misled in any manner meaningful to support a class-wide CRLA claim.

Any assertion that MyLife provides fake names in response to "who is looking for you" inquiries is equally implausible because McCrary and Brock plead that no names were provided to them in response to their query.  Clerkin's and Mendez's claim that the solicitation that "someone is looking for you" is actionable because they did not know the people identified as looking for them also fails because the "reasonable person" standard governing a CLRA claim cannot be predicated on an impossibility – that MyLife, a third party provider of information, would actually know the identity of persons known to each of its unique subscribers.

**Second,** neither McCrary nor Brock can plead a cause of action under the fraudulent prong of Business & Professions Code section 17200 ("UCL") because neither alleges that (1) he received solicitations from MyLife "representing that 'someone' is looking for the recipient";  (2) MyLife misrepresented to him "the prices and charges for its services [or] impos[ed] unauthorized charges on"

their accounts; or (3) "by using false pretenses [MyLife] or otherwise gain[ed] access to the[ir] address books." [DK 68 at 14:17-25]  Since Clerkin and Mendez do not plead that their address books were "hacked" by MyLife, their UCL claim based on that allegation must also be dismissed.  Clerkin and Mendez cannot claim that a reasonable person would be misled by MyLife's billing practices since neither McCrary nor Brock allege they were so misled.  Clerkin's and Menedez's claims of overcharges cannot stand since the undisputed record proves that they were simply charged for the term of use they purchased, as discovered on the website.  The allegation that "MyLife provides access to a list of **fake names** of people supposedly 'searching for you'"  fails because McCrary and Brock allege that they did not receive a list of any names, fake or otherwise, when they searched for who was looking for them on MyLife.  Finally, the fact that Clerkin and Mendez did not recognize the names of the persons identified as looking for them is not actionable because a reasonable person would not believe that MyLife could provide them with something MyLife could not know – the identity of persons known to a customer.

  **Third,** since Plaintiffs cannot plead any claim under the CLRA, their claim based on the unlawful prong of the UCL must also be dismissed.  To the extent any one Plaintiff can plead a plausible claim under the CLRA, the Court should dismiss all implausible allegations.

  **Fourth,** Plaintiffs' cause of action based on the unfair prong of the UCL must fail because their CLRA claim fails and because they fail to allege facts supporting the plausibility of their contention that the harm to consumers outweighs any benefit from MyLife's services.

  **Fifth,** Plaintiffs' common count claims and their causes of action for unjust enrichment and restitution fail for the same reasons their other causes of action fail.

  This is Plaintiffs' second failed effort to articulate a plausible claim against MyLife.  The shortcomings and inconsistencies of their claims are clear and all should be dismissed with prejudice.

## II. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

  MyLife is a successful internet-based people search site with more than 62 million members. [DK 68 at 7:21-8:4]   As reflected on MyLife's home page, MyLife provides two types services to

persons who sign up for free use of its website ("Members").[5]  MyLife allows Members to search for people ("People Search") and it allows Members to see who has searched on the MyLife website for persons with the Member's name, general age and zip code ("Who's Searching for You").[6]



---

[5] While ordinarily facts extrinsic to a complaint are not considered on a motion to dismiss, the Ninth Circuit recognizes two exceptions to the rule "that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion."  *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001)  The doctrine of judicial notice permits the Court to consider on this motion to dismiss relevant pages from MyLife's website because the accuracy of the accompanying facsimiles from the site are not reasonably in dispute and their accuracy is readily ascertainable. *Id.*  Accompanying this memorandum is a separate request for judicial notice detailing the legal basis upon which judicial notice is appropriate and seeking an order permitting the requested judicial notice.  Additionally, the accompanying facsimiles of MyLife's website can be considered on this motion to dismiss based on the doctrine of incorporation by reference.  Plaintiffs' claims rest on the contents of MyLife's site, which allows these facsimiles of relevant pages to be incorporated by reference. *Coto Settlement v. Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint.").

[6] *See* The accompanying Declaration of Kenneth Walker ("Walker Decl.") at Exhibit 1.

MyLife also provide premium memberships that, among other things, gives subscribers the full contact information for persons identified through People Search or Who's Searching for You. MyLife refers to its customers who subscribe for paid memberships as "Subscribers".  MyLife provides alternative subscription lengths and allows customers to compare prices for different terms by reflecting them on its website based on an effective monthly rate.



Walker Decl. Exh. 2.  MyLife bills Subscribers for the entire term of their membership upfront in a single payment -- a practice clearly reflected both in connection with the comparison of subscription options and where customers enter their payment information.

5

1    The CACC generally alleges that "MyLife[] is a scam that begins with a false solicitation that

2    'someone' is searching for them."  The CACC boldly makes this generic allegation that "In exchange

3    for [a] payment, … MyLife provides access to a list of fake names of people supposedly 'searching

4    for you,' together with access to a worthless website that is of no conceivable value to anyone."  [DK

5    68 at 2:13-19]

6        The CACC compiles the specific and inconsistent allegations of the four separate named

7    Plaintiffs.  Clerkin alleges that in mid-2010, he "began receiving emails from MyLife stating the

8    people were looking for him on MyLife."  In or around September 2010, Clerkin signed up for a

9    $12.95 per month membership and was charged $155.40 by MyLife for a "full membership term."

10   [DK 68 at 8:6-15]  Clerkin alleges he believed that he had signed up for only a month's worth of

11   service and that MyLife had overcharged him.  As set forth in the CACC, when Clerkin used MyLife

12   Who's Searching for You service, he discovered that he did not know the persons identified as

13   looking for him.  He then sought to cancel his service and obtained a refund.  [DK 68 at 8:9-18]

14       Mendez alleges that in early 2010, she received an email from MyLife stating that people were

15   searching for her on MyLife.  She alleges that while she signed up for a $5 membership, MyLife

16   charged her credit card $60 for the "total term."  [DK 68 at 8:20-25]  Mendez alleges that shortly after

17   joining MyLife she discovered "that no one she knew was actually searching for her," and thereafter

18   sought, and was allegedly refused, a refund.  [DK 68 at 8:25-9:2]

19       McCrary alleges that"[i]n early 2011 she saw an ad stating that someone could be looking for

20   her on MyLife," and, thereafter, paid $13 for one month's access.  She alleges that no one was looking

21   for her on MyLife.  [DK 68 at 9:5-11]  McCrary does not allege that she was in anyway misled by

22   MyLife's billing or that MyLife improperly overcharged her credit card.

23       Brock alleges that"[i]n early 2011, he saw an ad stating that someone could be looking for him

24   on MyLife."  "He thereafter signed up for MyLife's services and paid $45 for three months."

25    Brock alleges that "[i]n reality no one was looking for him."  [DK 68 at 9:12-17]

26       In the face of these striking divergences, "Plaintiffs [collectively] seek to represent a class

27   defined as all persons, worldwide, who purchased services from www.mylife.com, from the date that

28   the site commenced operation through the present." ("Class")  [DK 68 at 10:14-16]  Plaintiffs allege

that common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. [DK 68 at 11:3-5] The purported common questions alleged include:

- "Whether MyLife sent false solicitations telling potential victims that 'someone is searching for them'";

- "Whether MyLife misrepresented its prices and/or placed unauthorized charges on subscribers' accounts"; and

- "Whether MyLife used false pretenses to hack into or otherwise gain access to the address books of members of the Class."

[DK 68 at 11:6-13] Plaintiffs assert that their claims are "typical of the proposed class." They further allege that "[e]ach class member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories." [DK 68 at 11:18-20] On its face, however, the CACC belies those allegations.

## III. LEGAL ARGUMENT

### A. A Motion Brought Pursuant to Rule 12(b)(6) Is The Appropriate Vehicle To Eliminate Causes of Action, Class Allegations, And Other Contentions Whose Lack Of Legal Merit Is Evident On The Face Of A Pleading

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d. 729, 732 (9th Cir. 2001). To survive a challenge under Rule 12(b)(6), a complaint must contain "enough facts to state a claim for relief that is ***plausible on its face***." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .*Id*. (emphasis added). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

The Ninth Circuit has recently held that a motion brought pursuant to Rule 12(b)(6), rather than a motion to strike brought pursuant to Rule 12(f), is the appropriate vehicle to remove from a case allegations that fail as a matter of law, *even if excising such allegations would not dispense with an entire cause of action. Whittleston, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)

7

("Handi-Craft's 12(f) motion was really an attempt to have certain portions of Whittlestone's complaint dismissed or to obtain summary judgment against Whittleston as to those portions of the suit – actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion not a Rule 12(f) motion."). Dismissal under 12(b)(6) is not only appropriate for allegations on their merits but also for class allegations that cannot possibly be proven.  While such dispositions are unusual, "[s]ometimes the issues [relating to the propriety of a class certification] are plain enough from the pleadings" to permit the dismissal of the class allegation contained in a complaint pursuant to the standards governing Rule 12(b)(6).  *Falcon*, 457 U.S. at 160; *Kamm v. California*, 509 F.2d 205, 213 (9th Cir. 1975) (affirming dismissal of class allegation without any discovery); *In re Wall-Mart Stores, Inc.*, 505 F.Supp.2d 609, 615 (N.D. Cal.2007) (noting that dismissal of class allegations is permissible but rare); *Matsumara v. Rideout Memorial Hospital,* Case No. 2:09 cv-01835-MCE-DAD (E.D. Cal. June 11, 2010)[7] (granting motion to dismiss class allegations because plaintiff "failed to allege any basis for her belief that members of Class A-226 all received defective pay stubs similar to her own").

Since the Ninth Circuit's opinion in *Whittleston*, courts within the Ninth Circuit have relied upon Rule 12(b)(6) to expunge legally deficient allegations from a complaint even if they did not dispense with any specific cause of action.[8] *Walker v. Hughes Communications, Inc.*, 682 F.Supp.2d

---

[7] Available on Google Scholar at http://scholar.google.com/scholar_case?case=9633787485046408091&q=matsumara&hl=en&as_sdt=2,26.

[8] To the extent that the Court deems it inappropriate to dismiss any allegation contained in the CACC pursuant to Rule 12(b)(6) because such a dismissal would not effectuate the dismissal of an entire cause of action, Defendants will subsequently move the Court to dismiss such allegations pursuant to Rule 56 of the Federal Rules of Civil Procedure which allows the Court to adjudicate as a matter of law and dismiss allegations from a case even if their dismissal would not result in the dismissal of an entire cause of action.  Rule 56 permits summary disposition of matters deficient as a matter of law even if they amount to something less than a complete cause of action.  Fed.R.Civ.Pro. 56 ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."); *Whittleston*, 618 F.3d at 974 (recognizing that a Rule 56 motion as opposed to a Rule 12(f) motion to strike is "better suited" to adjudicate the legal sufficiency of contentions in a complaint).  Historically, many courts have narrowly read Rule 12(b)(6) to reach only complete causes of action and not to allow for dismissal of class or other legally insufficient allegations that form something less than a complete cause of action. *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D. Ariz. 2009) (in refusing to dismiss pursuant to Rule 12(b)(6) certain allegations of fraud contained in a Section 10(b) complaint, the court noted that it was "unaware . . . of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged.").

1031, 1047 (N.D. Cal. 2010) (striking certain allegations from UCL and CLRA claims but allowing plaintiff to proceed on others); *Rhodes v. Placer County*, 2011 WL 1302316 *26 (E.D. Cal. March 11, 2011) ("the motion to strike plaintiff's punitive damages claims against AMR is construed as a motion to dismiss and the motion is granted"); *Becker v. Wells Fargo Bank*, 2011 WL 1103439, *26 (E.D. Cal. March 22, 2011) (after denying defendants motion to strike plaintiffs claim for punitive damages because the unavailability [of such damages] "as a matter of law is not a legal basis for granting a motion to strike," the court indicated that it would entertain a motion to dismiss the damage claim if the plaintiff reassert it in his amended complaint).  Even if this Court were to take the traditional view that a "claim" within the meaning of Rule 12(b)(6) is limited to complete causes of action, relief is still appropriate at this stage to remove legally untenable allegations from the CACC because this Court can, with sufficient notice, convert this motion to dismiss into a Rule 56 motion for summary adjudication.  *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984).

**B.    The Patent Inconsistency Among Plaintiffs' Own Allegations Demonstrates That No Class Could Ever Be Certified In This Case.**

"The class action is 'an exception to the usual rule that ligation is conducted by and on behalf of the individually named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 2011 WL 2437013, *6; quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-701 (1979).  "The purpose of Rule 23 is to promote judicial economy." *Falcon*, 457 U.S. at 161 (Burger, J., concurring).  "[T]he class-action device saves the resources of both the court and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion…" *Califano*, 442 U.S. at 701.

The party seeking certification first must, consistent with Rule 23(a) of the Rules of Civil Procedure, demonstrate that

'(1) the class is so numerous that joinder of all members is impracticable,

'(2) there are questions of law or fact common to the class,

'(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

'(4) the representative parties will fairly and adequately protect the interests of the class.'

*Wal-Mart*, 131 S.Ct. at 2548; quoting Fed.R.Civ.Pro. 23(a).  Next, the movant must satisfy one of the three requirements listed in Rule 23(b).  Where a case presents individualized monetary claims that are more than incidental in nature -- like here where Plaintiffs demand, among other things, restitution of the various subscription fees paid by class members -- "the procedural protections attending the [Rule 23](b)(3) class" are necessary.  *Id.* at *13.  For a class to be certified pursuant to Rule 23(b)(3) the court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.Pro. 23(b)(3);  *Kamm*, 509 F.2d at 213 (trial court did not abuse its discretion in dismissing class allegations prior to extended discovery after finding that class mechanism was not superior to state compensation procedure following action by state attorney general).

As discussed, nothing requires this Court to wait until Plaintiffs bring a motion for class certification before evaluating the plausibility of class allegations.  *Falcon*, 457 U.S. at 160; *Wal-Mart*, 131 S.Ct. at 2551 ("'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question'"); quoting *Falcon* 457 U.S. at 160; *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) ("Although we have not previously addressed this argument directly, we conclude that Rule 23 does not preclude a defendant from bringing a preemptive motion to deny certification.").  The standard governing a challenge to the sufficiency of class allegation pleadings is the same as that governing any motion to dismiss under Rule 12(b)(6).  "The moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiff may be able to prove."  *Schilling v. Kenton County*, 2011 WL 293759 *4 (E.D. Ky 2011); *Bryant v. Food Lion, Inc.*, 774 F.Supp. 1485, 1495 (D.S.C. 1991) (same); *Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158, 1166 (N.D. Cal. 2008) (striking plaintiff's class allegations at the pleading stage).

As required by Rule 23(a), the CACC avers in conclusory fashion that there are common questions of law and fact shared by the Class members and that the named Plaintiffs "claims are typical of the claims of the proposed class."  [DK 68 at 11:3-20]  As the Supreme Court noted in *Falcon*:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class member will be fairly and adequately protected in their absence.

*Falcon*. 457 U.S. at 157-158. Here, as was true in the Supreme Court's recent *Wal-Mart* opinion, "[t]he crux of this case is commonality." *Wal-Mart*, 131 S.Ct. at 2550. "Commonality requires the plaintiff demonstrate that the class members 'have suffered the same injury.'" *Id*. at 2551; quoting *Falcon*, *supra*, at 157. "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Rather, "[t]heir claims must depend upon a common contention." *Id.* at 2545. In *Wal-Mart*, the example given was "the assertion of discriminatory bias on the part of the same supervisor." *Id.* at 2551. Here, it could be the assertion that each Class member received the same solicitation from MyLife, but such commonality is absent.

The *Wal-Mart* Court continues by clarifying what is a relevant common contention. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. The mere fact that Plaintiffs here can identify what could be common questions alone is of no import because "'[a]ny competently crafted class complaint literally raises common "questions"'" *Id.* at 2551; quoting Nagareda, *Class Certification in the Age of Aggregated Proof*, 84 N.Y.U.L.Rev. at 131-132.

> "What matters to class certification . . . is not raising common 'questions' – even in droves – but rather the capacity of a classwide *proceeding to generate common answers apt to drive the resolution of the litigation.* Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* quoting Nagareda at 132 (emphasis added).

As will be demonstrated below, Plaintiffs' "common questions" could never generate meaningful common answers that would permit resolution of this litigation on a classwide basis. Plaintiffs build their causes of action on three categories of wrongful conduct:

1.  The false solicitation that "someone is looking for you";

---

11

2.   Unfair billing practices; and

3.   Hacking of Members' address books.

Because no proceeding could plausibly "generate common answers," the class claim is stillborn, warranting its immediate dismissal.

    **1.**     **Plaintiffs Cannot Plead Common Questions That Could Generate Meaningful Common Answers With Respect MyLife's Alleged Solicitations That Someone Is Looking For You.**

While Plaintiffs allege as a common question "[w]hether MyLife sent false solicitations telling potential victims that 'someone' is searching for you," the answer to that question could have no relevance to the claims of McCrary and Brock because they do not allege that they ever received such a solicitation.  Instead, McCrary and Brock allege that they decided to subscribe to MyLife after seeing a MyLife advertisement indicating that someone **could be** looking for them.  [DK 68 at 9:5-17] Plaintiffs define their proposed Class as "all persons, worldwide, who purchased services from www.mylife.com." [DK 68 at 10:14-16]  The Class, therefore, purports to includes both Clerkin and Mendez, who purportedly received the direct solicitation "someone is looking for you," and McCrary and Brock, who did not.  Even if Plaintiff could argue "[w]hether MyLife sent false solicitations telling potential victims that "'someone' is searching for you" is a common question, accepting the allegation of the CACC as true, "the determination of [that question's] truth or falsity will [not] resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S.Ct. at 2545.  Simply put, whether Plaintiffs could prove that MyLife sent the alleged solicitation has no bearing on the claims of McCrary, Brock or any MyLife Subscriber similarly situated to them.  As a matter of law, the Class could never be certified with respect to any cause of action founded upon MyLife's alleged dissemination of such a solicitation.[9]

---

[9] Moreover, even if Plaintiffs could convince the Court that "is" and "could" mean essentially the same thing, which is absurd, class certification still could never be possible because even though reliance would be judged on a reasonable person standard, Plaintiffs still must show that class members were shown the same representation that induced the action that forms the basis of the cause of action. *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622, 632 (2010) (vacated class certification finding a presumption of classwide injury improper where a large number of class members were

Although not plead as a common question, Plaintiffs assert that MyLife's Who's Looking for You service generates a "list of fake names." [DK 68 at 2:17-19] Plaintiffs apparently make this bold assertion based on the allegation that neither Clerkin nor Mendez recognized the names of the persons MyLife indicated were looking for them. By contrast, however, both McCrary and Brock plead that their search on the MyLife showed that it "was not the case" that anyone was looking for them, *i.e.* their search did not generate any name, fake or otherwise. Therefore, the answer to whether MyLife populates its servers with fake names, which it does not, could not possibly have a common impact on the members of proposed Class in this case.

## 2. Plaintiffs Cannot Plead Common Questions Relating To MyLife's Billing Practices.

While Plaintiffs assert as a common question "[w]hether MyLife misrepresents its prices," the fact that neither McCrary nor Brock allege that they were in anyway mislead by MyLife pricing demonstrates at a minimum that "there would be no common *answers* apt to drive the resolution of the litigation" in a manner that would interest either Clerkin or Mendez. *Wal-Mart,* 131 S.Ct. at 2545; quoting Nagareda at 132. Nor is there commonality with respect to the CACC's allegation of overcharges. Neither McCrary nor Brock alleges that MyLife overcharged their credit cards. Moreover, any effort by Clerkin and Mendez to create a subclass based on persons whose credit cards were overcharged would result in an inappropriate "fail safe" class that could not be certified. *Brazil,* 585 F.Supp.2d at 1167 (cannot define a class by those who suffered the wrong alleged); *Boucher v. First American Title Insurance Co.*, 2011 WL 165598, *5 (W.D. Wash. 2011) (A "fail-safe class" is one where the definition inappropriately conditions a customer's membership on a finding of the defendant liable to him or her and is called such because if the defendant prevails, the class will not exist).

---

never exposed to questioned label or advertisements). The CACC on its face demonstrates a lack of commonality in the challenged representations.

3.     **Since Not One Of The Plaintiffs Allege That MyLife Hacked Into Their Address Books, Plaintiffs Cannot Maintain Class Allegations Based on Any Cause Of Action Founded Upon Such A Claim.**

Finally, Plaintiffs assert as a common question "[w]hether MyLife used false pretense to hack into or otherwise gain access to the address books of members of the class." [DK 68 at 11:12-13] Since not one of the named Plaintiffs alleges that MyLife hacked into, or otherwise gained access to, his or her address book, the Plaintiffs could never show that the Class suffered any common injury resulting from this allegation. Moreover, even if some class claim were possible with respect to this unfounded allegation, these Plaintiffs could not be class representatives because any class definition that reached this allegation would necessary exclude them. *Falcon*, 457 U.S. at 156 ("We have repeatedly held that 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) and *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 206, 216 (1971).

**C.     Plaintiffs' Individual Claims Fail As A Matter Of Law And Should Be Dismissed.**

1.     **Plaintiffs Fail To Plead Any Actionable CLRA Claim.**

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale…of goods or services to any consumer." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); quoting Cal.Civ.Code § 1170. Because claims brought under the CLRA sound in fraud, such claims are subject to the heightened pleading standard of Rule 9(b) of the Rules of Civil Procedure. *Id.*

The CACC pleads that MyLife violated the CLRA in only two ways:

1. "by disseminating false solicitations representing that 'someone' is looking for the recipient" [DK 68 at 13:12-13]; and

2. "by misrepresenting the prices and charges for its services and imposing unauthorized charges on Class members' accounts" [DK 68 at 13:15-16].

(a)      **Neither McCrary's nor Brock's Allegations Support A Claim For Violation Of The CLRA As Plead**

Neither McCrary nor Brock alleges that they received any solicitation from MyLife.  Instead they both plead that they subscribed to MyLife after they each "saw an ad that someone could be looking from" them.  [DK 68 at 9:5-7, 12-14]  Similarly, neither McCrary nor Brock allege that they were misled by the prices MyLife charges for its services or that MyLife imposed unauthorized charges on their accounts.  [DK 68 at 9:5-17]  Since McCrary and Brock cannot allege facts that support the pleaded cause of action, their CLRA claims must be dismissed without leave to amend. *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 641 (2009) ("in order to bring a CLRA action, not only must the consumer be exposed to the unlawful practice, but some damage must result").

(b)      **While Clerkin and Mendez Plead That They Were Deceived By MyLife Pricing, It Is Not Plausible That A Reasonable Consumer Would Be Deceived.**

Clerkin and Mendez both allege that they were misled by MyLife's pricing and allege that they were overcharged.  CACC does not, nor can it, support the proposition that "it is probable that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled," and for this reason Clerkin's and Mendez's claims based on MyLife's billing practices fails. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320 (2011) ("'unless the advertisement targets a particular disadvantaged or vulnerable group it is judged by the effect it would have on a reasonable consumer'") quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003); *Freeman v. Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1994) ("false or misleading advertising and other unfair business practices claim[s] must be evaluated from the vantage of a reasonable consumer.").

Clerkin and Mendez claim that they were misled by MyLife's advertised billing terms as reflected on MyLife's website.  Since "'the primary evidence in a false advertising case is the advertising itself,'"[10]  it is appropriate for the Court incorporate by reference,[11] and to take judicial

---

[10] *Silicon Image, Inc. v. Analogix Semiconductor, Inc*, 642 F.Supp.2d 957, 968 (N.D. Cal. 2008) quoting *Colgan v. Leatherman Tool Group Inc*., 135 Cal.App.4th 663, 682 (2006) (additional citations omitted).

notice of, such terms as posted on the MyLife's website in order to evaluate whether it is plausible that Clerkin and Mendez could "show[] potential deception of consumer acting reasonably in the circumstances."[12]  *Anaya Hill v. Roll International Corp.*, 195 Cal.App.4th 1295 (2011) (affirming demurrer that a reasonable consumer would not be deceived that green drop on the Fuji water bottle constituted an endorsement of the product's environmental superiority); *Baxter v. Intelius*, 2010 WL 3791487, *1-2 (C.D. Cal. 2010) (in dismissing UCL and CLRA claims the court took judicial notice of and incorporated by reference pages from defendant's website in concluding that negative option monthly membership enrollment was not deceptive); *Ford v. Hotwire*, 2007 WL 6235779, *1 (S.D. Cal. 2007) (court took judicial notice of, and incorporated by reference, defendants' terms of use in concluding that reasonable persons would not be deceived that they were being charged a resort fee in addition to the hotel charges paid for on defendant's website).

---

[11] *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").  In affirming the grant of a motion to dismiss, the Ninth Circuit ruled that the lower court, in dismissing plaintiff's claim for defamation, did not error in considering pages from the ESPN.com website that put in context images that plaintiff alleged were defamatory.

[12] "Judicial notice may be necessary to '[p]revent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting…documents upon which their claims are based."  *Baxter v. Intelius*, 2010 WL 3791487, *1 (quoting *Swift v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Walker Decl. , Exh. 2.

While Clerkin and Mendez paid different amounts for their subscription -- because the subscriptions were acquired at different times -- they both allege that in viewing the MyLife website they were misled into believing that they were purchasing a one month subscription, and that MyLife overcharged them for the subscription they selected.  While Clerkin and Mendez are correct that MyLife allows comparison of subscription alternatives by showing the effective monthly cost, there is no dispute that MyLife's subscription page discloses the fact that customers will be charged a single

1   payment for their entire subscription term and on the payment page they are expressly told total

2   amount of the charge. [13]

3           Even more fatal to Clerkin's and Mendez's claim that a reasonable person would be deceived

4   is Brock's inability to plead that he suffered such deception.  Instead, Brock pleads that after being

5   presented a structurally identical subscription page he signed up for a three month membership for

6   $45 dollars.  He does not plead any deception with respect to MyLife's website showing his effective

7   monthly payment by comparison or charging him in full for his subscription at the time of he signed

8   up.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (1995) (affirming dismissal of UCL and CLRA

9   claim finding that it is not reasonable that customer would not read qualifying language).  Mendez's

10  and Clerkin's CLRA claim with respect to MyLife's pricing and billing are implausible and should be

11  dismissed.

12                  **(c)     Neither Clerkin Nor Mendez Allege Facts Demonstrating That It Is**

13                          **Probable That They Will Prove Deception With Respect To Any**

14                          **Solicitation Reading Someone Is Looking For You.**

15          Both Clerkin and Mendez allege that they were deceived by a solicitation they received

16  indicating that "someone is looking for you "and that the information about this "someone" can be

17  obtained from MyLife.com."  [DK 68 at 13:12-14]   Both Clerkin and Mendez admit that upon

18  subscribing to MyLife they obtained a list of names in response to their search on the MyLife website.

19  Both Clerkin and Mendez specifically plead that "no one [they] knew was looking for [them]," but

20  they do not plead that MyLife represented that Subscribers would know the identity of persons who

21

---

22  [13] As MyLife's Vice-President of Product has stated in his declaration, the webpage on MyLife's
    website that provides information concerning subscriptions to MyLife's site and services (the
23  "Subscription Webpage") during the time period relevant to the CCAC has included both static and
    dynamic information.  Walker Decl., ¶¶ 6-7.  Although MyLife's Subscription Webpages includes
24  information that changes at different times and for different customers, important types of information
    has remained static at all times relevant to the CACC.  *Id.*  This static information has been displayed
25  online for every customer who visited the website during the period of time that the Plaintiffs in this
    action became members of MyLife.  In particular, every customer visiting the Subscription Webpage
26  on the MyLife website during the relevant time period would see (1) options for available lengths of
    subscriptions, (2) effective monthly rates for each of those options, (3) MyLife's billing practice that
27  the customer would be charged a single upfront payment; and (4) the amount of that single upfront
    payment for each available term length equal to the effective monthly rate multiplied by the number of
28  months selected by the customer for the subscription.  *Id.*

---

had been searching for them.  Since only a unique Subscriber – and not a third party information provider like MyLife -- could possibly know the identity of persons known by that unique Subscriber, this allegation does not support a plausible inference that a reasonable person would necessarily know the identity of the persons who had been looking for that person.  Simply put, what is not possible – that MyLife could know whether a Subscriber knows the identity of the person looking for a person with the characteristics of the Subscriber – cannot be considered plausible when judging whether a reasonable person would be misled within the meaning of the CLRA.

Although not specifically alleged by either Clerkin or Mendez, the CACC contains a general allegation that MyLife generates lists of fake names in response to queries of who is looking for a Subscriber.  [DK 68 at 17-19]  While standing alone this allegation might be sufficient to take the claims of Clerkin and Mendez beyond the pleading stage, this allegation is directly contradicted by the allegations of McCrary and Brock, who both allege that when they searched for who was "looking for them" they learned no one was looking for them.  [DK 68 at 9:9-11, 16-17]  The allegation that the MyLife site failed to generate any names for persons looking for McCrary or Brock eviscerates any potential that Clerkin or Mendez could prove that the MyLife site generates lists of fake names when Subscribers search for who is looking for them.

### 2.     Plaintiffs Fail To Plead Any Actionable Claim Under The UCL

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business practice.'"  *Kwikset Corp. v. Superior Court*, 51 Cal.4th at 320; quoting Cal.Bus.Pro.Code § 17200.  "[W]here once private suits could be brought [under the UCL] by 'any person acting for the interests of itself, its members or the general public', now private standing is limited to 'any person who has suffered injury in fact and has lost money or property' as a result of unfair competition."  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 228 (2006) (citations omitted).  Plaintiffs assert three separate counts addressing each of the three components of the UCL statute.

1    **(a)    Plaintiffs Fail To Plead Any Actionable Claim Under the**

2    **Fraudulent Prong Of The UCL**

3    Count III of the CACC claims a violation of the fraudulent and deceptive practices prong of

4    the UCL.  [DK 68 at 14:10-12]  Plaintiffs assert three bases for their claim.  Specifically they plead

5    that "MyLife violated the fraudulent and deceptive prong of the UCL by

6    1.    "disseminating false solicitation representing that 'someone' is looking for the

7    recipient . . .[;]

8    2.    "misrepresenting the prices and charges for its services and imposing unauthorized

9    charges . . .[; and]

10   3.    "using false pretense to hack into or otherwise gain access to the address books of

11   members . . . ."

12   [DK 68 at 14:17-25]

13   **(i)    Neither McCrary Nor Brock Allege Any Facts Supporting**

14   **The Plead Violation Of The Fraudulent Prong Of The UCL**

15   As discussed above, both McCrary and Brock fail to plead (1) that they received any

16   solicitation from MyLife indicating that someone **is** looking for you; (2) that MyLife misrepresented

17   to them MyLife's pricing; (3) that MyLife placed unauthorized charges on their credit cards; or (4)

18   that MyLife hacked into or otherwise gained access to their address books.  Their inability to plead

19   that they personally suffered any harm from the accused activity dooms their claim.  *In re Tobacco II*

20   *Cases*, 46 Cal.4th 298, 306 (2009) (a plaintiff "proceeding on a claim of misrepresentation as the basis

21   of his or her UCL action must demonstrate actual reliance on the alleged deceptive or misleading

22   statement").

23   **(ii)    Clerkin and Mendez Do Not Plead A Plausible Claim Under**

24   **The Fraudulent Prong Of The UCL**

25   Like McCrary and Brock, neither Clerkin nor Mendez plead that MyLife "hacked into or

26   otherwise [gained] access to the[ir] address books," and therefore that have not alleged standing

27   sufficient to bring a UCL claim predicated on this alleged conduct.  [DK at 14:20-22]

28

1    Clerkin and Mendez, however, do plead that they were misled by MyLife's pricing and

2    perceive that MyLife placed unauthorized charges on their credit cards.  Again, however, their

3    inability to demonstrate how it is plausible that a reasonable person would be similarly misled

4    undermines their UCL claim as it did their CLRA claim.  Specifically, Brock's inability to plead that

5    he was similarly misled when he was charged $45 dollars up front for a three month membership

6    indicates that it is simply not plausible that a reasonable consumer would be misled as Clerkin and

7    Mendez claim they were.  *See Freeman v. Time, Inc.*, 68 F.3d at 290;  *Anaya Hill v. Roll International*

8    *Corp.*, 195 Cal.App.4th 1295 (after viewing ad court dismissed UCL claim on grounds that the alleged

9    deception was not plausible based on a reasonable consumer standard).  Similarly, it is appropriate for

10   the Court to take judicial notice of, and to incorporate by reference, the relevant pages of MyLife's

11   website setting forth its subscription options and for this Court at the pleading stage to determine that

12   it is simply not plausible that McCrary or Brock could ever establish that their alleged reliance was

13   reasonable.[14]  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (in affirming dismissal of defamation claim,

14   Ninth Circuit affirmed the appropriateness of lower court incorporating by reference webpage

15   surrounding photo); *Baxter v. Intelius*, 2010 WL 3791487, *1-2 (C.D. Cal. 2010) (the court took

16   judicial notice of and incorporated by reference pages from defendant's website in dismissing UCL

17   and CLRA); *Ford v. Hotwire*, 2007 WL 6235779, *1 (S.D. Cal. 2007) (same).

18   Finally, as discussed above, Clerkin and Mendez have not alleged a plausible claim that a

19   reasonable consumer would be misled, as they plead they were, that the representation that "someone

20   is looking for you" meant that the recipient would know the identity of the individuals looking for

21   them.  Since it is impossible for an information provider like MyLife to know whether a customer

22   knows the identify of a person who is looking for the customers, Clerkin and Mendez have not plead a

23   plausible theory that a reasonable consumer would be misled by simply alleging that they could not

24   identify the names of the persons who MyLife indicated were looking for them.  While the CACC

---

[14] As noted previously, the Subscription Webpages displayed to MyLife's customers during the time period covered by the CACC, including McCrary and Brock, presented options for different length of subscriptions and  the opportunity to choose their own time period, with each option accompanied by differing effective monthly rates.  Walker Decl., ¶¶ 7-8, Exh. 2.

generally pleads that "MyLife provides access to a list of fake names of people supposedly 'searching for you,'" the fact that McCrary and Brock allege that their search failed to indicate that anyone was looking for them renders implausible the possibility that Clerkin and Mendez can prove this "fake name allegation."

> **(b)     Plaintiffs Fail To Make Any Actionable Claim Under The Unlawful Prong Of The UCL.**

Plaintiffs' claim under the unlawful prong of the UCL is dependent upon their ability to plead a viable CRLA claim because "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal.App.4th 1544, 1555 (2007); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n. 3 (9th Cir. 2009) (plaintiff's inability to plead any violation of law warranted dismissal of UCL claim).  To the extent that the Plaintiffs, or anyone of them, fail to plead a plausible CLRA claim, their claim under the unlawful prong of the UCL must be similarly be dismissed.

> **(c)     Plaintiffs Fail To Plead A Plausible Claim Under The Unfair Prong Of The UCL**

Plaintiffs allege that that MyLife's conduct described in the CACC "violate[s] the unfair prong of the UCL

> 1.     "because such conduct violate[s] various laws and policies recognized by the California Legislature and the California courts, including without limitation, the CLRA,
>
> 2.     "because the utility of MyLife's conduct is significantly outweighed by the gravity of the harm it impose[s] on customers, and
>
> 3.     "because MyLife's business practices . . . are oppressive, unscrupulous or substantially injurious to consumers."

[DK 68 at 16:15-21]  What Plaintiffs attempt to articulate as three separate standards are in fact recognized as only two distinct tests for adjudicating whether a practice is unfair under the UCL.

The first test "requires a plaintiff to show that a practice violates public policy as declared by 'specific, constitutional, statutory or regulatory provisions.'"  *Rubio v. Capital One Bank*, 613 F.3d

1   1195, 1205 (9th Cir. 2010) quoting *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854 (2002).

2   The only specific "constitutional, statutory or regulatory provision" cited in the CACC is the CLRA.

3   To the extent that the CACC fails to plead a cause of action under the CLRA, Plaintiffs plead nothing

4   to support that they have a plausible claim under the unfair prong of the UCL.

5          The second test is "whether the alleged business practice 'is immoral, unethical, oppressive,

6   unscrupulous or substantially injurious to consumers **and** requires the court to weigh the utility of the

7   defendant's conduct against the gravity of the harm to the alleged victims.'"   *Drum v. San Fernando*

8   *Valley Bar Ass'n*, 182 Cal.App.4th 247, 257 (2010) quoting *Bardin v. DiamlerChrysler Corp*, 136

9   Cal.App.4th 1255, 1260 (2006) (emphasis added).  Plaintiffs' effort to dissect this test into two more

10   digestible components is unavailing.  As discussed previously, Plaintiffs' UCL claim is governed by

11   the heightened pleading standard of Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

12   Cir. 2009) ("we have specifically ruled that Rule 9(b) standards apply to claims for violations of the

13   CLRA and UCL.").  Plaintiffs aver nothing to allow this Court to conclude that it is plausible that

14   Plaintiffs could sustain any claim under the unfair prong of the UCL if, as the above demonstrates,

15   Plaintiffs cannot plead a plausible cause of action under the CLRA or the other two prongs of the

16   UCL.  Since Plaintiffs lack standing to maintain any claim relating to the CACC's allegation that

17   MyLife hacks into or otherwise gains access to address books and cannot plead a plausible claim that

18   a reasonable person would be misled by MyLife's pricing, these allegations cannot serve as a

19   predicate for their unfairness claim.  At best, Plaintiffs are left to argue that it is plausible that the

20   balance will tip in their favor with respect to the unfairness that Clerkin and Mendez suffered when

21   they could not recognize the identity of the persons MyLife indicated were looking for them and that

22   Brock and Mendez suffered when they discovered that no one was looking them.  While the exact

23   reach of the unfairness prong may be uncertain, it certainly cannot require conduct that is impossible –

24   here to require that MyLife know the identity of all persons a Subscriber knows or to guarantee that

25   someone is looking for each person who views an advertisement that someone could be looking for

26   them.

27

28

1

**D.      Plaintiffs Have Not Stated A Claim For Unjust Enrichment/Restitution.**

2       Plaintiffs' causes of action for unjust enrichment/restitution and for money had and received

3   are dependent upon the wrongful conduct that form the basis for their UCL and the CLRA claims.  To

4   the extent Plaintiffs fail to plead plausible claims under these causes of action, their claim for unjust

5   enrichment/restitution and money had and received are similarly implausible and should be dismissed.

6   *See Walter v. Hughes Communications*, 682 F.Supp.2d 1031 (N.D. Cal. 2010) (rejects that money had

7   and received is a remedy available for deceptive advertising); *Marilao v. McDonald's Corp.*, 632

8   F.Supp.2d 1008, 1013 (S.D. Cal. 2009) ("Because Plaintiff's cause of action under the UCL fails

9   based on these allegations, Plaintiff fails to sufficiently plead that McDonald's has been unjustly

10  enriched . . . .); *Berryman v. Merit Property Management, Inc.*  152 Cal.App.4th 1544, 1559-1560

11  (2007) (since UCL and CLRA claims failed so did the claims for unjust enrichment and money had

12  and received)

13  **IV.     CONCLUSION**

14      For the reasons set forth above, Defendants MyLife and Oak Investment respectfully request

15  that the Court dismiss each claim for relief against them contained in the CACC and dismiss all

16  Plaintiffs' class allegations.  Alternatively, Defendants request that the Court dismiss all such claims

17  for which Plaintiffs fail to plead a plausible claim for relief, either under Federal Rules of Civil

18  Procedure 12(b)(6) or Rule 56.

19

20  DATED:  July 28, 2011                    Respectfully submitted,

21                                          By _____/S/ John Shaeffer_____

22                                          John Shaeffer
                                            LATHROP & GAGE LLP
23                                          1888 Century Park East, Suite 1000
                                            Los Angeles, CA 90067
24                                          Telephone: (310) 789-4600
                                            Fax: (310) 789-4601
25                                          Email: jshaeffer@lathropgage.com
                                            Attorneys for MYLIFE.COM INC. and OAK
26                                          INVESTMENT

27

28