IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CLERKIN and VERONICA MENDEZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MYLIFE.COM, INC.; JEFFREY TINSLEY; RACHEL GLASER; W. DWIGHT GORALL; ARMEN AVEDISSIAN; MICHAEL SOH; SHARYN ELES; and OAK INVESTMENT PARTNERS,<br><br>    Defendants.<br>_____/ | No. C 11-00527 CW<br><br>ORDER GRANTING DEFENDANT GORALL'S RULE 12(B)(2) MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS AND GRANTING IN PART PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS COUNSEL<br>(Docket Nos. 39, 42 and 47) |

    Defendant W. Dwight Gorall moves to dismiss Plaintiffs John Clerkin and Veronica Mendez's claims against him for lack of personal jurisdiction.  Gorall and Defendants MyLife.com, Inc.; Jeffrey Tinsley; Rachel Glaser; Armen Avedissian; Michael Soh; Sharyn Eles; and Oak Investment Partners move to dismiss Plaintiffs' action for failure to state a claim.  Plaintiffs oppose these motions and move to appoint their counsel as interim class counsel.  Non-parties Cynthia McCrary and Cody Brock oppose Plaintiffs' motion.  The motions were heard on June 9, 2011. Having considered oral argument and the papers submitted by the parties, the Court GRANTS Gorall's Rule 12(b)(2) motion to dismiss, GRANTS in part Defendants' Rule 12(b)(6) motion to dismiss and DENIES it in part and GRANTS in part Plaintiffs' motion to appoint

their counsel as interim class counsel.

BACKGROUND

The following allegations are contained in Plaintiffs' complaint.

MyLife.com, Inc., operates mylife.com, an Internet website. MyLife presents those who sign up for its service with "a list of fake names of people supposedly 'searching for you.'" Compl. ¶ 1. To show that the website-generated lists are false, Plaintiffs point to a testimonial posted on the Internet by an individual who registered on the website as "sfsf sdgfsdgs." Id. at 3:4. The website then returned a result, indicating that seven people were looking for "sfsf sdgfsdgs." Id. Plaintiffs cite another individual's Internet testimonial stating that, irrespective of the zip code entered, the website indicated that "Grovia Paxton" was residing in that zip code area and was looking for the individual. Id. at 3:11-17.

In mid-2010, Clerkin began receiving emails from MyLife, stating that people were searching for him on the website. On or about September 25, 2010, Clerkin signed up for MyLife "at $21.95 for one month." Compl. ¶ 7. After using the website, Clerkin realized "that no one he knew was looking for him." Id. He then discovered that he had been charged $155.40. Clerkin requested a full refund. However, MyLife refunded only $104.55 and kept the balance.

In early 2010, Mendez received an email from MyLife stating that someone was searching for her. Like Clerkin, she subsequently discovered "that no one she knew was actually searching for her."

2

Compl. ¶ 8. Mendez signed up for a $5.00 "trial subscription," but was charged $60.00. Id. When she canceled the service and requested a refund, MyLife refused to return any money.

The individual Defendants hold the following positions: Tinsley is MyLife's founder, chairperson and chief executive officer; Glaser is MyLife's chief operating and financial officer; Gorall, a Florida resident, is MyLife's Vice President of Emerging Business; Avedissian is a MyLife employee who develops business strategies; Soh is MyLife's Senior Vice President for Marketing; and Eles is MyLife's Vice President of Marketing Operations. Glaser, Gorall, Avedissian, Soh and Eles "conspired with MyLife, Mr. Tinsley, and others to perpetrate" the alleged fraudulent scheme. Compl. ¶¶ 11-15.

Oak Investment Partners, a venture capital firm, provided $25 million to MyLife. It, too, "conspired with MyLife, Mr. Tinsley, and others to perpetrate" the alleged fraudulent scheme. Compl. ¶ 16.

Plaintiffs bring the following claims against Defendants: (1) common count for money had and received; (2) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, et seq.; (3) violation of the fraud prong of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) violation of the UCL's unlawful prong; (5) violation of the UCL's unfair prong; and (6) unjust enrichment and common law restitution.

Plaintiffs contend that the individual Defendants and Oak Investment Partners should be held liable for MyLife's conduct

3

because "each of them personally performed acts" giving rise to the first through fifth causes of action. Compl. ¶¶ 33, 47, 63, 76 and 89. Plaintiffs also argue that each Defendant aided and abetted and conspired with MyLife and the other Defendants, and furnished the means to accomplish the alleged misconduct, all of which also supports liability against them. Plaintiffs seek respondeat superior liability against Tinsley, Glaser and Gorall for Avedissian's, Soh's and Eles's conduct. Finally, Plaintiffs contend that Tinsley and Glaser can be held personally liable for the conduct of MyLife and other Defendants based on an agency theory.

## DISCUSSION

### I. Gorall's Rule 12(b)(2) Motion to Dismiss

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that the court has jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's

4

favor.  AT&T, 94 F.3d at 588.

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disc, Inc., 557 F.2d at 1286.  California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis.  Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

   A.   General Jurisdiction

General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even if the cause of action has no relation to those contacts.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  The standard for establishing general jurisdiction is "fairly high."  Id.  Random, fortuitous or attenuated contacts do not count in the minimum contacts calculus.  Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985).  Factors considered in evaluating the extent of contacts include whether the defendant makes sales, solicits or engages in business, designates an agent

5

for service of process, holds a license, or is incorporated in the forum state. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiffs plead only that Gorall has aided and abetted MyLife's alleged misconduct and worked with other Defendants to perpetrate the alleged fraud. They do not allege any particular action taken by Gorall. Plaintiffs' unadorned allegations, which offer no factual background, are not sufficient to support general jurisdiction over Gorall.

B.  Specific Jurisdiction

A court has specific jurisdiction over a defendant when the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286. The "minimum contacts" required to assert specific jurisdiction are analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction. Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

Plaintiffs argue that Gorall purposefully directed his

6

activities toward California residents.[1]  For a defendant's conduct to demonstrate purposeful direction, the defendant must "allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Schwarzenegger, 374 F.3d at 802 (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

As noted above, Plaintiffs make only broad, general allegations against Gorall.  Without more, the fiduciary shield doctrine applies to him.  Under this doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989).  The doctrine is subject to two exceptions: "(1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities."  Wolf Designs, Inc. v. DHR & Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (citations omitted).  Plaintiffs do not allege that MyLife is the alter ego of Gorall, and their averments do not afford any insight into how Gorall controlled or directly participated in the alleged fraudulent scheme.  Plaintiffs'

---

[1] In a heading, Plaintiffs contend that Gorall purposefully availed himself of the privilege of conducting activities in California.  However, the purposeful availment analysis generally pertains to contract claims.  See Schwarzenegger, 374 F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.").  Plaintiffs have not alleged that Gorall entered into a contract.

7

pleadings do not support specific jurisdiction over Gorall.

Accordingly, Plaintiffs' claims against Gorall are dismissed without leave to amend for lack of personal jurisdiction.  Although Plaintiffs seek to conduct jurisdictional discovery, they do not justify their request and it is denied.  See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (concluding that plaintiffs' belief that discovery will reveal additional contacts is not sufficient to justify granting jurisdictional discovery).  If, in the course of otherwise permissible discovery in this case, Plaintiffs learn of information that would support specific personal jurisdiction over Gorall, they may promptly move for leave to amend to add him as a Defendant.

II.  Defendants' Rule 12(b)(6) Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.

8

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

  A. Plaintiffs' Claims Against the Individual Defendants and Oak Investment Partners

Plaintiffs base their claims against the individual Defendants and Oak Investment Partners on allegations that these Defendants performed acts that facilitated MyLife's alleged misconduct, conspired with each other to advance the challenged scheme and "furnished the means" to accomplish any alleged wrongdoing. Further, Plaintiffs seek to hold Tinsley, Glaser and Gorall on respondeat superior grounds, asserting that they authorized and directed their subordinates to engage in misconduct.

These general allegations are not sufficient to state claims against the individual Defendants or Oak Investment Partners. Plaintiffs' complaint does not explain what these Defendants did to

9

participate in the alleged scheme.  For instance, although Plaintiffs allege that these Defendants personally performed acts, they do not identify any particular conduct.[2]  A complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Accordingly, Plaintiffs' claims against the individual Defendants and Oak Investment Partners are dismissed.  Plaintiffs are granted leave to amend to allege the acts each Defendant performed to advance the alleged fraudulent scheme.

B.   Plaintiffs' CLRA Claim Against MyLife

The CLRA imposes liability for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

Plaintiffs acknowledge that their CLRA claim is based on fraud and that they must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9.  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. Proc. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780

---

[2] Indeed, it is not clear how Oak Investment Partners, an entity, could "personally perform" an action.

10

F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

Plaintiffs contend that their CLRA claim has two bases: (1) MyLife's representations in its email solicitations to Plaintiffs that "someone" was looking for them and (2) MyLife's billing practices. The Court considers each in turn.

### 1. Email Solicitations

The gravamen of Plaintiffs' complaint about MyLife's email solicitations is that the emails represented that someone was searching for Plaintiffs, even though no one was. Plaintiffs purportedly received such emails in early to mid-2010. They plead that the website produces "a list of fake names" for those who sign up. As noted above, Plaintiffs cite several testimonials posted on the Internet recounting tests of the mylife.com website suggesting that these names are fake.

Plaintiffs' allegations, which must be taken as true, satisfy their pleading burden under Rule 9 and, if proved, could show that MyLife violated the CLRA.[3] Their allegations suggest that MyLife's

---

[3] Specifically, MyLife's alleged actions could be found to fall within the following categories of conduct proscribed the CLRA,

11

statement that people were looking for them was false or deceptive. Defendants argue that Plaintiffs' inability to recognize the names of the people looking for them does not demonstrate that its emails were false or deceptive. This is beside the point. Plaintiffs plead that the names of the people purportedly looking for them are fictitious and they allege a sufficient factual basis to support this assertion.

Defendants contend that Plaintiffs have failed to plead any damage based on the alleged misrepresentations. This is incorrect. Plaintiffs allege that, based on MyLife's refusal to offer a full refund, Clerkin effectively paid $50.85. MyLife declined to refund any portion of the $60.00 Mendez paid. These alleged amounts reflect Plaintiffs' damages. Defendants contend that Plaintiffs do not plead that they did not receive value from their use of the site. This argument is also unavailing. Plaintiffs aver that the website presented lists of fake names and provided information "of no conceivable value to anyone." Compl. ¶ 1. This suggests that they did not receive value from their subscriptions.

Accordingly, Defendants' motion to dismiss Plaintiffs' CLRA claim against MyLife, to the extent it is based on the email solicitations, must be denied.

---

(3) Misrepresenting the affiliation, connection, or association with . . . another. . . .

(5) Representing that . . . services have . . . uses [and] benefits . . . which they do not have . . . .

(9) Advertising . . . services with intent not to sell them as advertised.

Cal. Civ. Code § 1770.

12

2.  Billing Practices

Plaintiffs contend that MyLife's billing practices violated the CLRA. They allege that Clerkin signed up for services "at $21.95 for one month" but was billed $155.40. Compl. ¶ 7. They also allege that Mendez signed up for a "trial subscription . . . for $5.00" but was charged $60.00. Id. ¶ 8. Viewed in the light most favorable to Plaintiffs, these allegations state a CLRA claim. The averments suggest that, based on MyLife's representations, Plaintiffs signed up for a particular subscription, but that MyLife billed for another.

Accordingly, Plaintiffs' CLRA claim against MyLife will not be dismissed in any respect.

C.  Plaintiffs' UCL Claims Against MyLife

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

To assert standing under the UCL, plaintiffs must allege that they "suffered an injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

13

The purpose of section 17204 is to "eliminate standing for those who have not engaged in any business dealings with would-be defendants."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 317 (2011).

Plaintiffs' allegations support standing under the UCL.  They plead facts suggesting that MyLife deceived them through its email solicitations and representations about its billing practices and that they lost money as a result.  Further, Plaintiffs' allegations supporting their CLRA claim against MyLife likewise support their claims against MyLife under the UCL's unlawful and fraudulent prongs.  Below, the Court considers whether Plaintiffs have stated their claim against MyLife under the UCL's unfair prong.

In Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company, 20 Cal. 4th 163 (1999), the California Supreme Court enunciated the elements of a UCL claim brought by competitors under the UCL's unfair prong.  Since then, California courts of appeal have reached varying conclusions as to the elements consumers must plead and prove to prevail under the UCL's unfair prong.  See, e.g., Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735-736 (9th Cir. 2007); Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010).  Three tests have been used.  Drum, 182 Cal. App. 4th at 256.  Under one test, a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition."  Id.  Under the second test, a consumer is required to plead that a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and

14

demonstrate how "the utility of the defendant's conduct" is not outweighed by "the gravity of the harm to the alleged victim." Id. (citation and internal quotation marks omitted). The third test, which is based on the Federal Trade Commission's definition of unfair business practices, requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Id. at 257 (citation and internal quotation marks omitted).

Under any of these tests, Plaintiffs allege sufficient facts to support their claim against MyLife under the UCL's unfair prong. Defendants do not dispute that, if Plaintiffs are able to state a CLRA claim, they satisfy the first test stated above. Plaintiffs' allegations also satisfy the second test because they have alleged misconduct without utility that outweighs injury to consumers. Finally, Plaintiffs allege facts indicating that they have lost money based on MyLife's alleged misconduct, that they did not benefit from this alleged misconduct and that, based on MyLife's purported deception, they could not reasonably have avoided the injury.

Accordingly, Plaintiffs' claims against MyLife under the unlawful, unfair and fraud prongs of the UCL are cognizable.

D.  Plaintiffs' Claim Against MyLife for Money Had and Received

A claim under the common count for money had and received is stated if it is alleged that "the defendant is indebted to the

15

plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." Schultz v. Harney, 27 Cal. App. 4th 1611, 1623 (1994) (citation and internal quotation marks omitted). Defendants contend that this claim rests on the viability of Plaintiffs' other claims. Because Plaintiffs have stated CLRA and UCL claims based on MyLife's alleged email solicitations, their common count against MyLife for money had and received is cognizable.

E.  Unjust Enrichment and Restitution

California courts appear to be split as to whether there is an independent cause of action for unjust enrichment. Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law). One view is that unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004). In McBride, the court construed a "purported" unjust enrichment claim as a cause of action seeking restitution. Id. There are at least two potential bases for a cause of action seeking restitution: (1) an alternative to breach of contract damages when the parties had a contract which was procured by fraud or is unenforceable for some reason; and (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct and the plaintiff chooses not to sue in tort but to seek restitution on a quasi-contract theory. Id. at 388. In the latter case, the law implies a contract, or quasi-contract, without regard to the parties' intent, to avoid unjust enrichment. Id.

16

Another view is that a cause of action for unjust enrichment exists and its elements are receipt of a benefit and unjust retention of the benefit at the expense of another. Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

Even under McBride's more stringent view, Plaintiffs state an unjust enrichment claim. As already explained, they have alleged adequately that MyLife obtained money from them based on deceptive email soliciations. Thus, Plaintiffs' unjust enrichment claim against MyLife is cognizable.

### III. Plaintiffs' Motion to Appoint Their Counsel as Interim Lead Counsel

Federal Rule of Civil Procedure 23(g)(3) permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Plaintiffs ask the Court to appoint their counsel, Bursor & Fisher P.A., as interim lead class counsel. As noted above, McCrary and Brock, who are not parties to this action, oppose Plaintiffs' motion. They ask the Court to deny Plaintiffs' motion as premature or, in the alternative, to appoint their counsel as interim co-lead class counsel. McCrary is the plaintiff in McCrary v. MyLife.com, Inc., Case No. C 11-2353 CW (N.D. Cal.), and Brock is the plaintiff in Brock v. MyLife.com, Inc., Case No. C 11-3073 CW (N.D. Cal.).

Plaintiffs' action will go forward. Having considered the parties' submissions, the Court appoints Plaintiffs' counsel and McCrary and Brock's counsel as co-interim class counsel.

17

CONCLUSION

For the foregoing reasons, the Court GRANTS without prejudice Gorall's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (Docket No. 39), GRANTS in part Defendants' Rule 12(b)(6) motion to dismiss and DENIES it in part (Docket No. 42) and GRANTS in part Plaintiffs' motion to appoint their counsel as interim class counsel (Docket No. 47).  If, in the course of otherwise permissible discovery in this case, Plaintiffs learn of information that would support specific personal jurisdiction over Gorall, they may promptly move for leave to amend to add him as a Defendant.  Plaintiffs' claims against the individual Defendants and Oak Investment Partners are dismissed for failure to state a claim.  Plaintiffs are granted leave to amend to plead facts supporting personal liability against these Defendants.  Defendants' Rule 12(b)(6) motion to dismiss is denied in all other respects.

This case, along with McCrary and Brock, shall proceed as a consolidated action.  All future filings shall be filed in the 11-0527 case, the lowest numbered of the three lawsuits.  The Clerk shall close the files on the 11-2353 and 11-3168 cases.

Defendants MyLife.com and Oak Investment Partners' motions concerning Plaintiffs' Consolidated Amended Class Action complaint are set to be heard on September 1, 2011 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 8/15/2011

CLAUDIA WILKEN
United States District Judge